719 F.2d 1448
 David DeWITT, Plaintiff-Appellee,
v.
The WESTERN PACIFIC RAILROAD COMPANY, a corporation,
Defendant-Cross Claimant-Appellee,
and
The Flintkote Company, a corporation, d/b/a U.S. Lime,
Defendant-Cross Defendant-Appellant.
 No. 82-4249.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 13, 1983.
Decided Nov. 9, 1983.
 
 Peter Davis, Crosby, Heafey, Roach & May, Siegfried Hesse, Oakland, Cal., for plaintiff-appellee.
 David W. Gordon, Bronson, Bronson & McKinnon, San Francisco, Cal., for defendant-cross defendant-appellant.
 Appeal from the United States District Court for the Northern District of California.
 Before DUNIWAY, SWYGERT,* and CANBY, Circuit Judges.
 DUNIWAY, Circuit Judge:
 
 
 1
 This is an appeal from a judgment entered upon a jury verdict on claims arising from a railroad collision on a spur line near Salt Lake City, Utah. We affirm and assess attorney's fees and costs in favor of appellees.
 
 
 2
 I. The Facts.
 
 
 3
 David DeWitt, a conductor for the Western Pacific Railroad Co., was injured when the train in which he was riding one night collided with two loaded freight cars standing on a spur line leading to a plant owned by the Flintkote Co. Western Pacific served the plant under a "spur track" agreement, and the train was on its way to the plant to deliver empty cars and pick up loaded ones. The train's engines were shoving it down the spur so that the car at the end of it, not its engine, collided with the cars standing on the track. Flintkote employees had pushed those cars out of the plant, and they had rolled around one curve on the spur and come to rest hidden behind another.
 
 
 4
 DeWitt sued Western Pacific under the Federal Employers' Liability Act, 45 U.S.C. Sec. 51 et seq., and Flintkote under a negligence theory. Defendants cross-claimed against each other for indemnity, claiming, respectively, diversity and pendent jurisdiction. Before trial, Western Pacific settled with DeWitt for $23,000. The parties stipulated to a trial before a magistrate. A jury found in special verdicts that neither Western Pacific nor DeWitt was negligent, and awarded DeWitt damages of $400,900. The magistrate entered an indemnity judgment for $86,433.52, including attorney's fees and costs, in favor of Western Pacific and against Flintkote.
 
 
 5
 II. Validity of Trial before the Magistrate.
 
 
 6
 Our decision in Pacemaker Diagnostic Clinic of America v. Instromedix, Inc., 9 Cir., 1983, 712 F.2d 1305 as amended Oct. 3, 1983, reh'g in banc granted Oct. 20, 1983, 718 F.2d 971 does not apply retroactively to this case. Id. at 1313 - 1314. Thus, we treat the decision of the magistrate as valid.
 
 
 7
 III. The Judgment for DeWitt.
 
 
 8
 Flintkote attacks (1) the jury's finding that DeWitt was not contributorily negligent, (2) the amount of damages awarded, and (3) the indemnity judgment.
 
 
 9
 A. Contributory negligence.
 
 
 10
 On review of the jury's finding of fact, we must affirm if the evidence reasonably supports the verdict. Beverage Distributors, Inc. v. Olympia Brewing Co., 9 Cir., 1971, 440 F.2d 21, 24.
 
 
 11
 Flintkote's "most significant instance of contributory negligence" on the part of DeWitt fades quickly in the light of the evidence. Flintkote notes that DeWitt knew that Flintkote sometimes left cars outside its plant on the spur line, had encountered cars there himself, and knew that "standard procedure on a curve [was] to stop the train and send a brakeman around a blind corner to determine whether it was safe." Opening brief at 11. Flintkote overlooks the fact that DeWitt's knowledge of standing cars was confined to a location near the third curve on the spur, considerably closer to the plant than the second curve, where the accident occurred. The evidence was that it was "standard procedure" to stop at the third curve, but there was no evidence that it was standard to stop at the second curve. Flintkote misstates the record when it says that DeWitt knew of a previous accident at the second curve: the evidence was that he had heard merely a rumor of an accident, and that he understood that accident to have occurred at the third, not the second curve.
 
 
 12
 Flintkote also directs our attention to evidence that DeWitt was partially responsible for enforcing safety rules on the train, that he did not place a man on the front end of the train to watch the track ahead, that he did not place a caboose at the front of the train, that he failed to order the engineer to slow the train's speed, and that he seated himself awkwardly in the engine cab. But Flintkote concedes that the record also contains "some explanation of DeWitt's failures" in these matters. Opening brief at 10. We find that DeWitt's "explanation" was more than sufficient to support a finding that he acted reasonably under the circumstances. DeWitt was not cited for any safety violations; it would have been unsafe to use a "point man" to watch the track from the front of the train; a caboose would have been unsafe or impractical; it was not clear that the train was traveling faster than was customary along the track; DeWitt was "seated awkwardly" because there were one too few seats in the engine, a factor that, according to Flintkote's argument at trial, showed that Western Pacific, not DeWitt, was negligent.
 
 
 13
 B. Damages.
 
 
 14
 Flintkote argues that the $400,900 award is clearly excessive because it compensates DeWitt for a total disability when, in fact, he is able to work, albeit not at his previous job as conductor.
 
 
 15
 We will not, on appeal, disturb an award of damages unless it is clear that the evidence does not support it. Flores v. Pierce, 9 Cir., 1980, 617 F.2d 1386, 1392. Flintkote's argument is meritless. DeWitt presented evidence showing a future wage loss, even considering his future employment apart from the railroad, totaling $841,568, and considerable evidence of pain and suffering, past wage loss, and continuing medical expenses. In its briefs to this court, Flintkote merely summarizes the evidence, concluding that DeWitt's damage case "was brief," "[n]o economist testified, and only three exhibits were introduced." Opening brief at 13. It offers nothing that would lead us to question the damage amount.
 
 
 16
 C. Sanctions for frivolousness.
 
 
 17
 We grant DeWitt's request for attorney's fees and double costs in Flintkote's appeal from the judgment for DeWitt. We have discretion to award attorney's fees and costs as a sanction against a frivolous appeal. McConnell v. Critchlow, 9 Cir., 1981, 661 F.2d 116, 118; Fed.R.App.P. 38; 28 U.S.C. Sec. 1912. An appeal is frivolous if the result is obvious, or the arguments of error are wholly without merit. McConnell, 661 F.2d at 118.
 
 
 18
 While Flintkote attacked the sufficiency of the evidence as to DeWitt's conduct and damages, it "made no serious attempt to undermine" the fact finder's conclusions on those matters. See Libby, McNeill, and Libby v. City National Bank, 9 Cir., 1978, 592 F.2d 504, 514. Flintkote's arguments were clearly without merit. The only result of the appeal against DeWitt is to delay payment of his judgment. See id. at 515. Flintkote argues that its appeal should not be considered frivolous because it could have made, but chose not to make, several arguments that it concluded were really frivolous. We congratulate Flintkote on its decision to forgo other frivolous points on appeal, but that does not make the points it did choose to argue any less frivolous. "Counsel must realize that the decision to appeal should be a considered one, ... not a knee-jerk-reaction to every unfavorable ruling," id., quoting Simon & Flynn, Inc. v. Time Inc., 2 Cir., 1975, 513 F.2d 832, 835.
 
 
 19
 IV. The Judgment for Western Pacific.
 
 
 20
 A. The indemnity contract.
 
 
 21
 The magistrate entered judgment for Western Pacific on its indemnification claim after holding that the jury had found by its special verdicts that the railroad was entitled to recover under theories of express and implied indemnity. Because we affirm the judgment under express indemnity, we need not discuss implied indemnity.
 
 
 22
 A spur track agreement between Western Pacific and Flintkote stated in relevant part, in paragraph 5, that
 
 
 23
 [Flintkote] also agrees that no pipe, conduit, structure, opening, excavation or debris of any kind whatsoever shall be made, placed or allowed to exist beneath or upon or in the vicinity of said tracks beyond the boundary line of the land of Railroad without first giving Railroad written notice thereof, it being the intent of this paragraph that [Flintkote] shall neither act nor fail to act with respect to said tracks and the area adjacent thereto so as to create a condition unsafe for use by the employees of Railroad in providing rail service. In case of the breach of any obligation herein, in this paragraph contained, [Flintkote] assumes and agrees to indemnify Railroad against all liability for loss, damage, injury and/or death arising therefrom.
 
 
 24
 The magistrate presented the contract excerpts above to the jury, after overruling Flintkote's objection that the collision occurred on a section of track beyond that specified in the contract. ER 1807. In a special verdict, the jury answered "yes" to the question: "Do you find that any failure of [Flintkote] to use reasonable care in performing under the terms of the agreement ... was the proximate cause of damages sustained by [Western Pacific]?"
 
 
 25
 Flintkote argues that it was error to present the express indemnification issue to the jury because, as a matter of law, the contract covered neither the location of the collision nor Flintkote's conduct alleged to have caused the collision. The parties stipulated that California law governed the indemnification issues. We review the magistrate's interpretation of the indemnification contract de novo as a question of law, Transport Indemnity Co. v. Liberty Mutual Insurance Co., 9 Cir., 1980, 620 F.2d 1368, 1370, and we give his interpretation of California law little or no deference, Telford v. Clackamas County Housing Authority, 9 Cir., 1983, 710 F.2d 567, 569.
 
 
 26
 The collision occurred at a spot on the spur beyond that specified in the indemnity contract. Thus, Flintkote argues that even assuming it was negligent, it may not be held liable under the contract. But Flintkote does not argue that the negligent act that proximately caused the collision--the pushing of the cars out of the Flintkote plant--occurred on track not covered by the indemnity agreement. Flintkote cites Cal.Civ.Code Sec. 1648, which states that a contract "extends only to those things concerning which it appears that the parties intended to contract." It is clear from the language of the agreement, however, that the parties intended to contract "against all liability for ... damage ... arising" from negligent acts committed by Flintkote or its agents on the "tracks and the area adjacent thereto" specified in the agreement. The collision arose out of just such an act. The ruling by the magistrate, therefore, was correct.
 
 
 27
 Flintkote also argues that its negligent conduct was not covered by the contract. It notes that the contract specifically forbade it from leaving any "pipe, conduit, structure, opening, excavation or debris of any kind whatsoever" on or about the track, but does not refer to empty freight cars left on the track. It argues that the agreement should be strictly construed against indemnification.
 
 
 28
 In California, however, an indemnity contract need not be strictly construed against indemnification if the indemnitee is not negligent. Charles D. Warner & Sons, Inc. v. Seilon, Inc., 1974, 37 Cal.App.3d 612, 620, 112 Cal.Rptr. 425. We conclude that regardless of how the contract section just quoted is construed, it prohibited Flintkote's conduct. Flintkote overlooks the fact that section 5 states that Flintkote "shall neither act nor fail to act with respect to said tracks and the area adjacent thereto so as to create a condition unsafe for use by the employees of Railroad in providing rail service." The contract was properly construed to cover the specific conduct alleged.
 
 
 29
 B. Attorney's fees.
 
 
 30
 Finally, Flintkote argues that it should not have to pay, as part of the indemnification award, attorney's fees that Western Pacific incurred in prosecuting the indemnification claim.
 
 
 31
 Cal.Civ.Code Sec. 2778(3) states that unless a contrary intention appears, "[a]n indemnity against claims, or demands, or liability, expressly, or in other equivalent terms, embraces the costs of defense against such claims, demands, or liability incurred in good faith, and in the exercise of a reasonable discretion." Thus, costs, expenses and attorney's fees paid in defense of the claim are included within the amount that must be indemnified. Gribaldo, Jacobs, Jones & Associates v. Agrippina Versicherunges A.G., 1970, 3 Cal.3d 434, 447, 91 Cal.Rptr. 6, 476 P.2d 406; County of San Joaquin v. Stockton Swim Club, 1974, 42 Cal.App.3d 968, 973, 117 Cal.Rptr. 300. Flintkote does not dispute the fees Western Pacific incurred before the December 1981 hearing that established the good faith of its settlement with DeWitt. But it argues that it should not have to reimburse Western Pacific for fees it incurred since then.
 
 
 32
 The California courts hold that costs and attorney's fees for prosecuting an indemnification claim may be included in the indemnification award. Schackman v. Universal Pictures Co., 1967, 255 Cal.App.2d 857, 863, 63 Cal.Rptr. 607; accord Nicholson-Brown, Inc. v. City of San Jose, 1976, 62 Cal.App.3d 526, 537, 133 Cal.Rptr. 159, overruled on other grounds, Bullis v. Security Pacific National Bank, 1978, 21 Cal.3d 801, 815 n. 18, 148 Cal.Rptr. 22, 582 P.2d 109. This includes attorney's fees and costs incurred in defending the award on appeal. County of San Joaquin, supra, 42 Cal.App.3d at 974, 117 Cal.Rptr. 300, seems to be to the contrary, but it cites no authority and refused to follow the holding in Schackman in this regard, for reasons that are not clear to us. We prefer to follow Schackman and Nicholson-Brown.
 
 
 33
 V. Decision.
 
 
 34
 The judgment appealed from is affirmed. When the mandate issues, the trial court will (a) determine the amount of attorney's fees on appeal to be awarded to Western Pacific as part of its judgment for indemnity, and add that amount to the judgment against Flintkote, and (b) determine the amount of attorney's fees to be awarded to DeWitt against Flintkote for taking a frivolous appeal, and add that amount to DeWitt's judgment against Flintkote.
 
 
 35
 Costs on appeal to Western Pacific against Flintkote. Double costs on appeal to DeWitt against Flintkote.
 
 
 
 *
 The Honorable Luther M. Swygert, Senior United States Circuit Judge for the Seventh Circuit, sitting by designation