[No. G044105. Fourth Dist., Div. Three. Oct. 12, 2011.]

NICHOLAS LABORATORIES, LLC, Plaintiff, Cross-defendant and Respondent, v.
CHRISTOPHER CHEN, Defendant, Cross-complainant and Appellant.

COUNSEL

Weiss & Hunt, Thomas J. Weiss and Hyrum K. Hunt for Defendant, Cross-complainant and Appellant.

Quinn Emanuel Urquhart & Sullivan, Eric J. Emanuel, John Mark Potter and Diane M. Doolittle for Plaintiff, Cross-defendant and Respondent.

OPINION

**IKOLA, J.**—The question presented is whether plaintiff, Nicholas Laboratories, LLC (Nicholas Labs), is required to "indemnify" its ex-employee, defendant Christopher Chen, for attorney fees incurred by Chen during his successful defense of an action brought by Nicholas Labs. The trial court rejected Chen's assertion that various statutory (Lab. Code, § 2802, subd. (a); Corp. Code, § 317, subd. (d)) and/or contractual indemnity provisions obligated Nicholas Labs to reimburse Chen.

■ We hold that Labor Code section 2802 does not require an employer to reimburse its employee for attorney fees incurred in the employee's successful defense of the employer's action against the employee.[1] We further conclude Corporations Code section 317 has no application to limited liability companies, and that substantial evidence supports the court's denial of Chen's attorney fees based upon the alleged contract. Accordingly, we affirm the judgment.

FACTS

*Pleadings*

Nicholas Labs filed a complaint against Chen, listing seven theories of liability (breach of contract, breach of the implied covenant of good faith and fair dealing, conversion, negligence, money had and received, unjust enrichment, and constructive trust). The alleged factual basis for Nicholas Labs's complaint was the following: Chen was hired by Nicholas Labs as its director of information technology; Chen agreed to work full time and exclusively on behalf of Nicholas Labs; Chen instead engaged "in a business that made him a competitor of Nicholas Labs"; Chen diverted business opportunities away from Nicholas Labs; Chen stole certain personal property from Nicholas Labs (e.g., computers, printers); Chen misused the company credit card; and Chen, "in contravention of [Nicholas Labs's] specific directive," "involve[d] himself in a renovation project of the residence of [Nicholas Labs's] principal" and thereby "cause[d] third parties to enter into contracts to provide labor and

---

[1] All further statutory references are to the Labor Code unless otherwise stated.

equipment in the millions of dollars, purportedly binding [Nicholas Labs]." Nicholas Labs sought compensatory damages, punitive damages, reasonable attorney fees, and other relief in excess of $2 million.

Chen responded with a cross-complaint, claiming he "has incurred and will continue to incur expenses and attorneys fees to defend himself against claims which relate to his service as employee or agent of plaintiff. [Chen] is entitled to indemnity for all such claims and expenses under the provisions of the California Labor Code, the provisions of the California Corporations Code and the provisions of the operating agreement and articles of [Nicholas Labs]." Chen sought compensatory damages and indemnity, as well as attorney fees.

*Motions in Limine and Pretrial Stipulation*

Citing various alleged abuses of the discovery process by Nicholas Labs, Chen filed several motions in limine seeking either terminating sanctions or evidence sanctions against Nicholas Labs. (See Code Civ. Proc., § 2023.030, subds. (c), (d).) Nicholas Labs opposed these motions in writing.

But on the eve of trial, the parties filed a stipulation premised on the following facts: "WHEREAS, Nicholas Lab[s] has decided to dismiss its Complaint without prejudice, if Chen decides to submit his Cross-Complaint for disposition pursuant to written submission to and decision by the Court; [¶] WHEREAS, Chen has decided to submit his Cross-Complaint for disposition pursuant to written submission to and decision by the Court, exclusive of a jury and without the presentation of live testimony." The parties stipulated (1) Nicholas Labs "will dismiss its Complaint without prejudice pursuant to the Request for Dismissal attached hereto"; (2) "Chen will submit his Cross-Complaint" for a bench trial based on written submissions; and (3) "This stipulation is not a resolution of a disputed claim. [Nicholas Labs] has determined to dismiss the action for its own reasons, and [Chen] has determined to submit the cross-complaint in writing to the court for [his] own reasons."

The stipulation was accompanied by a request for dismissal of Nicholas Labs's complaint, "without prejudice."

*Evidentiary Submissions*

Thus, the parties submitted trial briefs and declarations pertaining to the cross-complaint. Notwithstanding Nicholas Labs's dismissal of its complaint, most of the evidentiary material submitted by Nicholas Labs was geared to proving Chen actually engaged in misconduct as alleged in the complaint. This material is irrelevant to the questions presented in this appeal. Also irrelevant to our review is evidence pertaining to criminal allegations against certain principals of Nicholas Labs.

The record does contain some evidentiary material pertinent to the question of contractual indemnity. Basically, the question of fact was whether Chen was an employee of the manager of Nicholas Labs, NS Holdings, LLC (NS Holdings), or an employee solely of Nicholas Labs. If Chen was an employee of the manager, NS Holdings, he arguably was entitled to indemnification under an indemnification clause included in Nicholas Labs's operating agreement.

A human resources department employee at NS Holdings authenticated various documentation (e.g., tax forms, benefit forms) suggesting Chen worked for Nicholas Labs (not NS Holdings). A paralegal at NS Holdings attested: Nicholas Labs "is . . . a limited liability company. The company was converted into a Delaware limited liability company in November 2002, and has continuously operated as a Delaware LLC since that time." The paralegal continued: "NS Holdings serves as the Manager of Nicholas Labs . . . ." "[T]he two companies keep separate books and records, maintain separate payrolls and employee benefit accounts, and have their own employees." Another individual declared: "NS Holdings is . . . a holding company that exists to manage various companies affiliated with the Nicholas family. NS Holdings' officers and employees therefore manage and provide services to entities such as Nicholas Labs. The employees of Nicholas Labs do not work for and are not employed by NS Holdings. Rather, Nicholas Labs is a validly-constituted limited liability company with its own employees."

Chen testified in a deposition that his title at Nicholas Labs was "Director of IT" and/or "senior director of IT." Chen confirmed this fact in a declaration, but added he took orders from and performed duties personally for Henry Nicholas (the ultimate owner of Nicholas Labs and a number of affiliated entities) and Craig Gunther (Nicholas's second in command). Essentially, Chen testified he considered himself to be employed by Nicholas more generally (rather than only for one specific entity, Nicholas Labs) and that, by taking orders directly from Gunther, the chief operating officer of NS Holdings, Chen worked for NS Holdings as well as Nicholas Labs.

Chen's written offer of employment indicated Chen would work for Nicholas Labs; the letter was signed by Gunther on behalf of NS Holdings. Prior to beginning his employment, Chen signed an "Employee Proprietary Information and Inventions Agreement" with all "subsidiaries, affiliates, successors and assigns" of The Management Company, LLC, another Nicholas entity. Nicholas Labs and NS Holdings were specifically referenced in this agreement as possessing certain intellectual property Chen was forbidden to appropriate.

The parties agree a copy of the Nicholas Labs operating agreement is in the record. This agreement selects California law to govern the agreement and all questions arising thereunder. Included in the operating agreement is an

indemnification provision: "The Company [(Nicholas Labs)] shall indemnify and hold harmless the Manager [(NS Holdings)] from and against any loss or expense incurred by reason of the fact that the Manager is or was a Manager of the Company, including without limitation any judgment, settlement, reasonable attorneys' fees and other costs or expenses incurred in connection with the defense of any actual or threatened action or proceeding, provided such loss or expense resulted from Good Faith Errors or from action or inaction taken in good faith for a purpose which the Manager reasonably believed to be in, or not opposed to, the best interests of the Company. The indemnification provided in this paragraph 7.07 also shall apply to the agents, employees and other legal representatives of the manager." NS Holdings was at all relevant times the manager of Nicholas Labs. NS Holdings was also the sole owner (referred to as a "member" under Corp. Code, § 17001, subd. (x)) of Nicholas Labs.

Counsel for Chen documented $89,884.34 in attorney fees incurred by Chen during the course of the litigation.

*Judgment*

The court rejected each of Chen's rationales for attorney fees. "Labor Code 2802 is applicable to third party claims against an employee, but not as to claims by an employer against its own employees. . . . [¶] As to Corporations Code 317(d), . . . Chen has not presented evidence of a judicial determination on the merits in his favor as required for mandatory indemnification pursuant to that code section. . . . [¶] As to indemnity based on the operating agreement, . . . Chen has not carried his burden of establishing that he was an agent/employee of NS Holdings, LLC. . . . [T]here was no employment agreement between NS Holdings, LLC and Chen. Additionally, there is insufficient evidence of direction and control of Chen's services by NS Holdings, LLC, and Chen's salary was paid by [Nicholas Labs] and not NS Holdings, LLC. There was insufficient evidence that Chen was an employee in an enterprise in which he was subject to the control of both Nicholas Labs and NS Holdings rendering him a joint employee of both entities."

The court entered judgment (1) for Chen and against Nicholas Labs on the complaint and (2) for Nicholas Labs and against Chen on the cross-complaint. The court awarded Chen his costs on the complaint and awarded Nicholas Labs its costs on the cross-complaint.

## DISCUSSION

Citing statutory authority (§ 2802, subd. (a); Corp. Code, § 317, subd. (d)) and the Nicholas Labs operating agreement, Chen claims Nicholas Labs is

obligated to "indemnify" Chen for the attorney fees he incurred in this action (both to defend against the complaint and pursue the cross-complaint for indemnification). Our review is de novo with regard to questions of statutory construction. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d 200, 11 P.3d 956].) We review the trial court's findings of fact for substantial evidence. (*In re First Capital Life Ins. Co.* (1995) 34 Cal.App.4th 1283, 1287 [40 Cal.Rptr.2d 816].)

*Section 2802*

Chen first contends section 2802 requires Nicholas Labs to "indemnify" Chen for his attorney fees in this case. Section 2802, subdivision (a), states: "An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful."

■ " 'California has a strong public policy that favors the indemnification (and defense) of employees by their employers for claims and liabilities resulting from the employees' acts within the course and scope of their employment.' [Citation.] . . . [S]ection 2802 codifies this policy and gives an employee a right to indemnification from his or her employer." (*Edwards v. Arthur Andersen LLP* (2008) 44 Cal.4th 937, 952 [81 Cal.Rptr.3d 282, 189 P.3d 285].)

■ "Section 2802 . . . requires an employer to indemnify an employee who is *sued by third persons* for conduct in the course and scope of his or her employment, including paying any judgment entered and attorney's fees and costs incurred in defending the action. [Citations.] As long as the employee is acting within the scope of his or her employment, the right to indemnity is not dependent upon a finding that the underlying action was unfounded." (*Cassady v. Morgan, Lewis & Bockius LLP* (2006) 145 Cal.App.4th 220, 230 [51 Cal.Rptr.3d 527], italics added (*Cassady*).)

"Unlike an insurer, the employer need not defend whenever there is a mere potential for liability. However, if the employer elects to run a risk and refuses to defend, the employer must indemnify the employee for his attorney fees and costs in defending the underlying action if the employee was sued for acts within the scope of his employment." (*Jacobus v. Krambo Corp.* (2000) 78 Cal.App.4th 1096, 1100 [93 Cal.Rptr.2d 425] (*Jacobus*).) An employee may also recover reasonable attorney fees (and other costs) incurred in suing an employer to force the employer to comply with section 2802, subdivision (a). (§ 2802, subd. (c); *O'Hara v. Teamsters Union Local #856* (9th Cir. 1998) 151 F.3d 1152, 1160–1161 (*O'Hara*).)

Chen argues an employer is obligated to indemnify an employee not only for expenditures and losses arising out of *third party* lawsuits,[2] but also for the employee's attorney fees if the *employer* unsuccessfully[3] sues the employee based on the actions of the employee during the course of employment. No court has directly addressed this precise issue.

■ Chen's interpretation of section 2802 conflicts with the common understanding of the word "indemnify" as applied to litigation (i.e., an obligation to pay for judgments suffered and/or expenses incurred in a lawsuit brought by a *third party* against the indemnitee, not a one-sided attorney fee provision in a dispute between the indemnitor and the indemnitee). But this common understanding of "indemnify" is not universally applied. "Although indemnity generally relates to third party claims, 'this general rule does not apply if the parties to a contract use the term "indemnity" to include direct liability as well as third party liability.' " (*Zalkind v. Ceradyne, Inc.* (2011) 194 Cal.App.4th 1010, 1024 [124 Cal.Rptr.3d 105]; see also *Dream Theatre, Inc. v. Dream Theatre* (2004) 124 Cal.App.4th 547, 555 [21 Cal.Rptr.3d 322].) ■ And Corporations Code section 317, subdivision (d), specifically requires a corporation to "indemnif[y]" its agents "against expenses actually

---

[2] For example, a law firm may be required to indemnify an employee if the employee is sued by a client of the firm for professional malpractice. (*Cassady, supra,* 145 Cal.App.4th at pp. 230–231.) The allegations of the complaint are not determinative of whether the employee is deemed to be in the scope of his or her employment. To wit, an employee who defeats a sexual harassment lawsuit brought by a coworker is entitled to indemnity under section 2802 for attorney fees incurred in defending the lawsuit. (*Jacobus, supra,* 78 Cal.App.4th at p. 1098.)

[3] We use the word "unsuccessful" here only to mirror Chen's argument. Chen vigorously asserts throughout his argument that the lawsuit against him was not only unmeritorious, but abusive as well. By doing so, he appears to attach a prevailing party requirement to the employee's right of indemnity under section 2802. And there is some authority for interpreting section 2802 to include a prevailing party requirement. (See *O'Hara, supra,* 151 F.3d at p. 1158 ["Although there are very few California decisions that discuss § 2802 in the indemnification context, those California courts that have dealt with it have held that in order to be acting in 'discharge of (his) duties' the employee must have acted 'within the course and scope of . . . employment' *and* the action against the employee must be 'unfounded.' "].) But the statute on its face contains no prevailing party requirement. (See *Cassady, supra,* 145 Cal.App.4th at p. 230 ["As long as the employee is acting within the scope of his or her employment, the right to indemnity is not dependent upon a finding that the underlying action was unfounded."]; *Jacobus, supra,* 78 Cal.App.4th at p. 1100.) If the statute does apply, the employer is required both to pay the cost of defense and to pay any judgment rendered against the employee "in direct consequence of the discharge of his or her duties." (§ 2802, subd. (a); see *Cassady, supra,* 145 Cal.App.4th at p. 230 ["Section 2802 thus requires an employer to indemnify an employee who is sued by third persons for conduct in the course and scope of his or her employment, *including paying any judgment entered* and attorney's fees and costs incurred in defending the action." (italics added)].) Thus, the facial applicability of the statute is conditioned on the employee being required to defend charges based on conduct committed within the scope of the employee's duties, or in obedience to the employer's direction; it is not conditioned on the employee's successful defense of the charges.

and reasonably incurred by the agent" to the extent the agent is successful in defending an action brought by or on behalf of the corporation against the agent. Thus, it is not enough to simply point to the word "indemnify" in section 2802 and thereby deny Chen's claim.

■ "When interpreting a statute, we look to the plain meaning of the statute's words, which are generally the most reliable indicator of the Legislature's intent." (*Cassady, supra,* 145 Cal.App.4th at p. 231.) Other than the use of the word "indemnify" (which, as noted above, usually refers to protection against third party claims but does not necessarily exclude claims brought by the indemnitor), nothing in the statute explicitly differentiates between lawsuits brought by the employer and lawsuits brought by a third party.

■ "The elements of a section 2802, subdivision (a) cause of action, as delineated by the statutory language, are: (1) the employee made expenditures or incurred losses; (2) the expenditures or losses were incurred in direct consequence of the employee's discharge of his or her duties, or obedience to the directions of the employer; and (3) the expenditures or losses were necessary." (*Cassady, supra,* 145 Cal.App.4th at p. 230.) As to the first and third elements, Chen expended money during this lawsuit and the expenditures were necessary (at least to some extent—the trial court did not reach the question of whether the fees were reasonable). As to the second element, can an employer's lawsuit against an ex-employee arise as a direct consequence of the employee's performance of his duties? The allegations in the complaint pertain to Chen's conduct while employed by Nicholas Labs. Had the complaint gone to trial, factual disputes about whether Chen acted within the course of his employment and according to the directions of Nicholas and Gunther would have been resolved. Does this mean the lawsuit against Chen was a "direct consequence" of Chen's performance of his job? Simply looking to the plain language of section 2802 does not provide a clear answer to these questions.

Two federal cases have come closer to addressing the issue presented than any California case. The first of these cases held (albeit with limited analysis) that two employees could recover attorney fees incurred both "to enforce their [section] 2802 claim for indemnity" and "in defending against the [union employer's section] 2865 claim."[4] (*O'Hara, supra,* 151 F.3d at p. 1160.) The first half of this holding is now uncontroversial, as section 2802 was amended in 2000 to clarify that employees are entitled to reasonable attorney fees and other costs incurred in enforcing their right to indemnification. (See § 2802, subd. (c).) The second half of the holding is arguably

---

[4] Section 2865 states in relevant part: "An employee who is guilty of a culpable degree of negligence is liable to his employer for the damage thereby caused to the employer."

authority in support of Chen's position. In *O'Hara*, the union employer (citing § 2865) and two ex-employees named Leal (citing § 2802) filed cross-complaints against each other in an attempt to pass the costs of a lawsuit (involving a different employee's allegations that the Leals committed various wrongs against her) on to the other. (*O'Hara, supra*, 151 F.3d at pp. 1155–1157, 1160–1161.)

By allowing the Leals to recover attorney fees, incurred in part defending against their ex-employer's cross-complaint, *O'Hara* stands for the proposition that defending against an employer's claim can (at least in some circumstances) provide the basis for indemnification under section 2802. Of course, the distinction between *O'Hara* and the instant case is that *O'Hara* involved an underlying third party claim that was the basis for the monetary dispute between the parties over who was required to indemnify whom. Moreover, the *O'Hara* court did not closely examine whether the Leals' pursuit of their indemnification rights could really be separated from their defense of the union's cross-complaint (which sought reimbursement for its costs of defending and settling the employee's lawsuit). We are not convinced *O'Hara* answers the question presented in this case.

Another Ninth Circuit case held that an employee who successfully sues an employer for wrongful termination is not entitled to recover attorney fees in that action under section 2802: "As the language of the statute makes clear, [section] 2802 is designed to indemnify employees for their legal *defense* costs when they are sued for actions arising out of their employment. [Citations.] It does not require an employer to pay the fees to support an employee's affirmative litigation against the employer." (*Freund v. Nycomed Amersham* (9th Cir. 2003) 347 F.3d 752, 766.) *Freund* provides some support to Nicholas Labs, but does not resolve the question presented here because Chen *was* sued for conduct during his employment at Nicholas Labs. The question remains whether it matters that Chen was sued by his employer rather than by a third party.

Given the lack of clear authority pertaining directly to section 2802, we broaden the scope of our analysis. How should section 2802 be interpreted in light of (1) an employer's right to sue an employee (based on an employee's alleged breach of contract, tort, negligence under § 2865, theft of trade secrets, or otherwise); (2) the default setting in California of parties paying their own attorney fees unless specifically provided otherwise in a statute or contract;[5] (3) the rule in California that contract provisions attempting to authorize unilateral attorney fee awards must be interpreted to authorize

---

[5] "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys . . . is left to the agreement, express or implied, of the parties . . . ." (Code Civ. Proc., § 1021.)

attorney fees to the prevailing party;[6] (4) special statutory rules authorizing attorney fees in particular circumstances that may arise in employer-employee litigation;[7] (5) Code of Civil Procedure section 128.7, which authorizes courts to award sanctions (including attorney fees) in certain circumstances; (6) the existence of torts for abuse of process and malicious prosecution; and (7) Corporations Code section 317, subdivision (d), which demonstrates that the Legislature can make plain it intends to depart from the ordinary meaning of "indemnify" to include a first party claim? Consideration of this more expansive fabric of the law suggests that any interpretation of section 2802 which would allow the statute to become a unilateral attorney fee statute in litigation between employees and employers would be incompatible with that larger body of law.

Thus, we conclude the attorney fees incurred by Chen do not fall within the domain of section 2802. We are not persuaded that the Legislature, in drafting section 2802, intended to depart from the usual meaning of the word "indemnify" to address "first party" disputes between employers and employees. The Legislature could have specifically provided in section 2802 that attorney fees incurred defending an action by the employer were recoverable by a prevailing employee. The fact that the Legislature did not do so suggests disputes between employers and employees are subject to the ordinary rules applying to the recovery of attorney fees in California litigation.

Chen raises a valid policy concern. Employers may in some instances file lawsuits against ex-employees for the purposes of harassment or intimidation, rather than to pursue legitimate claims. But this concern is true of every lawsuit. Courts nonetheless still apply the so-called "American rule" unless there is specific contractual or statutory authority to depart therefrom. (*Trope v. Katz* (1995) 11 Cal.4th 274, 278 [45 Cal.Rptr.2d 241, 902 P.2d 259] ["California follows what is commonly referred to as the American rule, which provides that each party to a lawsuit must ordinarily pay his own attorney fees."].) There are tools available to combat bad faith litigation

---

[6] "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." (Civ. Code, § 1717, subd. (a).)

[7] For instance, "[i]f a claim of [trade secret] misappropriation is made in bad faith, a motion to terminate an injunction is made or resisted in bad faith, or willful and malicious misappropriation exists, the court may award reasonable attorney's fees and costs to the prevailing party." (Civ. Code, § 3426.4.)

tactics (e.g., motions for sanctions, actions for malicious prosecution). That these tools are often difficult to utilize does not militate in favor of stretching the reach of section 2802.[8]

*Corporations Code Section 317*

 Chen also claims he is entitled to indemnity under Corporations Code section 317, subdivision (d). "To the extent that an agent of a corporation has been successful on the merits in defense of any proceeding referred to in subdivision (b) or (c) or in defense of any claim, issue, or matter therein, the agent *shall be indemnified* against expenses actually and reasonably incurred by the agent in connection therewith." (Italics added.) A proceeding under Corporations Code section 317, subdivision (c), includes one in which an "action by or in the right of the corporation" is brought against "an agent of the corporation . . . ."

 By its terms, Corporations Code section 317 applies to "corporations," not "limited liability companies." A threshold question in this case is whether a limited liability company is subject to Corporations Code section 317. Limited liability companies are governed by the Beverly-Killea Limited Liability Company Act (the Act; Corp. Code, § 17000 et seq.). Corporations Code section 17003, subdivision (*l*), authorizes limited liability companies to "[i]ndemnify or hold harmless any person." Corporations Code section 17155 likewise states that limited liability companies "may" indemnify its agents and employees, and "shall have [the] power to" purchase insurance for its agents and employees. (*Id.*, subds. (a), (b).) But no provision in the Act is similar to Corporations Code section 317 in mandating indemnity in certain situations. We conclude Corporations Code section 317 is inapplicable to limited liability companies. We need not address the trial court's stated ground for denying relief under section 317 of the Corporations Code.

*Contractual Indemnification*

 "Indemnity is a contract by which one engages to save another from a legal consequence of the conduct of one of the parties, or of some other

---

[8] The parties argue vehemently over whether it would be practicable to enforce section 2802 if we were to reach a contrary result in this case. Nicholas Labs claims an employer would, in some circumstances, be required to indemnify an employee for both the judgment and attorney fees even though the employee was found to be liable to the employer. Chen replies that indemnification would be limited to situations in which the employee defeats the employer in the lawsuit. (Cf. *O'Hara, supra,* 151 F.3d at p. 1158 ["an employer may argue, without contradiction, that an employee has acted 'within the scope of employment'. . ." for purposes of respondeat superior liability, but is not entitled to indemnity under § 2802].) Our analysis is unaffected by consideration of the *potential* absurdity of interpreting section 2802 to allow indemnification to employees *successfully* sued by their employers.

person." (Civ. Code, § 2772.) Here, the indemnity provision at issue covers NS Holdings and its agents, employees, and other legal representatives. The court found Chen was not an employee or agent of NS Holdings and therefore was not entitled to indemnification. There is substantial evidence for the court's conclusion. The documentation in the record and statements by witnesses put forth by Nicholas Labs suggest Chen was employed by Nicholas Labs, a distinct entity from NS Holdings. The court might also have concluded Chen was an employee or agent of both NS Holdings and Nicholas Labs, based on the actual working conditions of Chen's employment and Chen's written agreement with all affiliated entities (including NS Holdings) with regard to terms of his employment. (See *In re Ankeny* (Bankr. 9th Cir. 1995) 184 B.R. 64, 72–73.) But we will not reweigh the evidence on appeal. We therefore need not address whether the indemnity provision at issue would even apply to a first party dispute between Nicholas Labs and NS Holdings or one of its employees. (See, e.g., *Zalkind v. Ceradyne, Inc., supra*, 194 Cal.App.4th at pp. 1021–1029.)

## DISPOSITION

The judgment is affirmed. Nicholas Labs shall recover costs incurred on appeal.

Aronson, Acting P. J., and Fybel, J., concurred.

A petition for a rehearing was denied November 8, 2011, and appellant's petition for review by the Supreme Court was denied January 4, 2012, S198169.