Drew TAKACS, et al., Plaintiffs,

v.

A.G. EDWARDS AND SONS, INC., Defendant.

No. 04 CV 1852 JAH (NLS).

United States District Court, S.D. California.

Aug. 2, 2006.

James F. Clapp, Dostart Clapp and Coveney, San Diego, CA, for Plaintiffs.

Barbara I. Antonucci, Morgan Lewis and Bockius, San Francisco, CA, Christopher A. Parlo, Morgan Lewis and Bockius, New York City, for Defendant.

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DOC. NO. 82]

HOUSTON, District Judge.

### INTRODUCTION

On April 27, 2006, Defendant A.G. Edwards and Sons, Inc. ("Defendant") motion for summary judgment came on regularly for hearing. James Clapp, Kevin McInerney and Mark Thierman appeared on behalf of Plaintiffs Drew Takacs, Ryan Flynn and Caitlan Manoogian (collectively "Plaintiffs"). Rebecca Eisen and Daryl Landy appeared on behalf of Defendant. This Court, after hearing the oral argument of counsel, took the matter under submission. Now, after a careful consideration of the pleadings, relevant exhibits, the oral argument of counsel at the hearing, and for the

reasons set forth below, this Court DE-NIES Defendant's motion for summary judgment in its entirety.

## BACKGROUND

Plaintiffs Drew Takacs and Ryan Flynn ("Plaintiffs") are former financial consultants with Defendant. *See* Cplt. at 2. Plaintiffs filed their motion seeking restitution and recovery of alleged overtime pay and business expenses due to them. *See* Cplt. at 2–3. Plaintiffs seek to bring this action as a class action suit with the following defined classes of plaintiffs:

*Class A*—consists of all Financial Consultants who worked for Defendant in the State of California at any time between June 30, 2000 and the present;

*Class B*—consists of all Trainees who worked for Defendant in the State of California at any time between June 30, 2000 and the date Defendant reclassified the Trainees in California as non-exempt;

*Class C*—consists of all Financial Consultants and Trainees who worked for Defendant in the State of California at anytime during the Class Period and who, during the Class Period, incurred necessary business-related expenses that were not reimbursed by Defendant; and

*Class D*—consists of all members of Class A, Class B and/or Class C, who, as of the date this lawsuit was filed, were no longer employed by Defendant.

*See* Cplt. at 2. Plaintiffs filed a first amended complaint on December 9, 2004, adding Ryan Flynn as a plaintiff. Doc. No. 14. Plaintiff filed a motion for leave to file a second amended complaint on May 6, 2005. *See* Doc. No. 20. Defendant did not oppose Plaintiffs' motion. Doc. No. 27. On September 27, 2005, Magistrate Judge Nita L. Stormes granted Plaintiff's motion for leave to file a second amended complaint. *See* Doc. No. 59.

On August 16, 2005, Plaintiffs filed a motion to either permit Plaintiffs to file an amended complaint adding Caitlin Manoogian ("Manoogian") as class representative, or to allow Manoogian to intervene in this action. Doc. No. 33. Defendant filed an opposition on January 19, 2006. Doc. No. 68. Plaintiffs filed a reply *nunc pro tunc* on January 27, 2006. Doc. No. 79. This Court granted Plaintiffs' motion to add Manoogian as a class representative on March 9, 2006. *See* Doc. No. 119.

Defendant filed this motion for summary judgment on January 30, 2006, together with an *ex parte* application to extend the page limit of the motion to 42 pages. *See* Doc. No. 82. Plaintiffs filed an opposition on March 2, 2006, and similarly requested an extension of the opposition page limit to 42 pages. Doc. No. 112. The Court granted Defendants' *ex parte* application on February 24, 2006, allowing both parties to file extended briefs of 42 pages. *See* Doc. No. 110. Defendant filed a reply on March 9, 2006, concurrently filing an *ex parte* application seeking to extend their page limit to 17 pages. Doc. No. 127. Plaintiffs filed an opposition to Defendant's *ex parte* application, and sought in the interest of fairness to file a surreply to Defendant's reply. Doc. No. 121. Defendants filed a reply to Plaintiffs' response to Defendant's *ex parte* application. Doc. No. 125. This Court granted Defendant's *ex parte* application to extend the page limit of their reply, but denied Plaintiff's request to file a surreply. Doc. No. 125.

On March 14, 2006, Plaintiffs further filed a declaration in support of their *ex parte* application to file a surreply brief. Doc. No. 139. This Court issued an amended order granting Plaintiff's *ex parte* application to file a surreply brief, and allowing Defendant the opportunity to file a reply to Plaintiffs' surreply brief. *See* Doc. No. 137. Plaintiffs filed a surre-

ply brief on March 22, 2006. Doc. No. 141. Defendant filed a reply to Plaintiffs' surreply brief on March 24, 2006. Doc. No. 145. On March 29, 2006, Defendant additionally filed with the Court a notice of newly-issued authority in support of its motion for summary judgment. Doc. No. 155. On April 9, 2006, the parties stipulated to the dismissal with prejudice of Plaintiffs' Fourth Claim for restitution of wage deductions. Doc. No. 156.

On the day of oral argument, Defendant filed with this Court a notice of newly published authorities. Doc. No. 172. Plaintiffs did not have an opportunity to review or respond to the notice prior to or at the hearing. This Court subsequently issued an Order directing Plaintiffs to respond to Defendant's notice by May 5, 2006. Doc. No. 170. Plaintiffs filed a response to Defendant's notice on May 5, 2006. Doc. No. 173.

### DISCUSSION

### I. Legal Standard

#### A. Summary Judgment Motion

Summary judgment is properly granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party moving for summary judgment bears the initial burden of establishing an absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. Where the party moving for summary judgment does not bear the burden of proof at trial, it may show that no genuine issue of material fact exists by demonstrating that "there is an absence of

evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. 2548. The moving party is not required to produce evidence showing the absence of a genuine issue of material fact, nor is it required to offer evidence negating the moving party's claim. *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 885, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); *United Steelworkers v. Phelps Dodge Corp.,* 865 F.2d 1539, 1542 (9th Cir.1989). "Rather, the motion may, and should, be granted so long as whatever is before the District Court demonstrates that the standard for entry of judgment, as set forth in Rule 56(c), is satisfied." *Lujan,* 497 U.S. at 885, 110 S.Ct. 3177 (quoting *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548).

Once the moving party meets the requirements of Rule 56, the burden shifts to the party resisting the motion, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Without specific facts to support the conclusion, a bald assertion of the "ultimate fact" is insufficient. *See Schneider v. TRW. Inc.,* 938 F.2d 986, 990–91 (9th Cir.1991). A material fact is one that is relevant to an element of a claim or defense and the existence of which might affect the outcome of the suit. The materiality of a fact is thus determined by the substantive law governing the claim or defense. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (citing *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505).

When making this determination, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] ... ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505.

## II. Analysis

Plaintiffs allege causes of action for: 1) Restitution under the federal Fair Labor Standards Act ("FLSA") for over time pay; 2) Restitution of overtime pay under state law; 3) Recovery of state overtime pay under California Labor Code § 1194; 4) Restitution of state law overtime pay for Trainees; 5) Recovery of state law overtime pay under California Labor Code § 1194 for Trainees; 6) Recovery of rest and meal breaks under Labor Code § 226.7; 7) Restitution of business expenses under California Labor Code § 2802; 8) Recovery of business expenses on behalf of Class C; and 9) Recovery of waiting time penalties on behalf of Class D. Defendant seeks summary judgment to dismiss all remaining causes of action.[1]

### A. *Claim One—Restitution of Overtime Pay Under the FLSA On Behalf of Class A*

Plaintiffs state that under 29 U.S.C. § 201, "an employee must be paid overtime, equal to 1.5 times the employee's regular rate of pay, for all hours worked in excess of 40 hours per week." Cplt. at ¶ 12. Plaintiffs allege that Class A members regularly worked more than 40 hours per week, but were not paid overtime. Defendant counters that Plaintiffs' first cause of action is barred because: 1) Plaintiffs were exempt from the FLSA's overtime requirements under the federal ad-

ministrative exemption; 2) Plaintiffs were exempt from the FLSA's overtime requirements under the federal commission exemption; 3) Plaintiffs cannot seek federal overtime pay under Cal. Bus. Prof.Code § 17200; and 4) Plaintiffs cannot use an unfair competition claim under Cal. Bus. Prof.Code § 17200 to recover restitution for conduct that is lawful under California state wage and hour laws. *See* Doc. No. 82 at 2.

### 1. *Federal Administrative Exemption*

■ Under 29 U.S.C. § 207(a)(1), all employers engaged in interstate commerce cannot employ an employee "for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed," unless the employee is exempted from application of the FLSA. Exemptions are construed narrowly by the courts, and the employer bears the burden of proving that the employee is exempt from application of the FLSA. *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S.Ct. 453, 4 L.Ed.2d 393 (1960) ("We have held that these exemptions are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within the terms and spirit."); *see also Donovan v. Nekton, Inc.*, 703 F.2d 1148, 1151 (9th Cir.1983) (An "employer who claims an exemption from the FLSA has the burden of showing that the exemption applies.").

■ Defendant first states that Plaintiffs fail to plead an "independent claim under the FLSA." Doc. No. 83 at 10. A review of Plaintiffs' second amended com-

---

1. The parties stipulated to a dismissal with prejudice of Plaintiffs' fourth claim for restitu-

tion of wage deductions. *See* Doc. No. 156.

plaint, however, appears to sufficiently plead an independent claim under the FLSA. For example, in paragraph 12, the complaint cites to 29 U.S.C. § 201 that "an employee must be paid overtime, equal to 1.5 times the employee's regular rate of pay, for all hours worked in excess of 40 per week." Cplt. at 4. In light of the lenient pleading standards under Fed. R.Civ.P. 8(a), the complaint sufficiently gives fair notice to Defendant and pleads an independent claim under the FLSA. Fed.R.Civ.P. 8(a)(2); *Jones v. Community Redevelopment Agency,* 733 F.2d 646, 649 (9th Cir.1984); *Kimes v. Stone,* 84 F.3d 1121, 1129 (9th Cir.1996).

Defendant next states that Plaintiffs as "highly paid stockbrokers," and as a matter of policy are expressly exempt from receiving overtime. Doc. No. 83 at 10. "The FLSA precludes Plaintiffs from seeking to represent a class of employees— stockbrokers—who are among the highest paid individuals in our society." *Id.* Plaintiffs counter that their primary duty "was *not* work that was 'directly related to management policies or general business operations' of AGE or its customers; instead, plaintiffs' primary duty was 'production' or 'sales' work." Doc. No. 112 at 3 (emphasis in original). Plaintiffs also state that "AGE failed to pay plaintiffs on a salary basis throughout their employment." *Id.*

■ The Department of Labor, at the time Plaintiffs were employed, promulgated both a "long test" and a "short test" for determining whether an employee was administratively exempt. Both parties employ the short test in the instant matter. *See* Doc. No. 83 at 11; Doc. No. 112 at 2–3, citing 29 C.F.R. §§ 541.2 and 541(e)(2) (old

regs).[2] The short test requires that Defendant show: 1) Plaintiffs' primary duty consisted of "office or nonmanual work directly related to management or general business operations" of the employer or its customers; 2) Plaintiffs customarily and regularly exercised discretion and independent judgment; and 3) Plaintiffs. were compensated on a salary or fee basis of not less than $250 per week.[3] 29 C.F.R. § 541.200. Plaintiffs' argument in favor of overtime pay rests on the description of their "primary work duties" and their allegation that they were compensated less than $250 per week. Plaintiffs do not challenge that they "customarily and regularly exercised discretion and independent judgment" during the course of their work duties. Doc. No. 128 at 4.

*a. Salary Basis*

■ Defendant claims that "[i]t is undisputed that, during the applicable limitations period, Plaintiffs received a predetermined, guaranteed amount of at least $1,150 per month ($265 per week), each and every month they worked as Financial Consultants." Doc. No. 83 at 11. Defendant describes this "draw" portion of Plaintiffs' salary basis as such: Financial Consultants, after nine months of training, are paid on a commission basis. The commission paid is calculated by summing up "commission credits" (for completed transactions) as well as "commission debits" for charges associated with any losses. "Debits resulted in part from errors Financial Consultants made that, for instance, required AGE to reverse a client trade at a loss, such as effectuating a purchase instead of a sale of stock." *Id.* at 8. If the

---

**2.** The DOL amended and renumbered regulations relating to the relevant administrative exemptions on August 23, 2004. In such cases, the regulations will be designated "old regs" to clarify the pre-amendment regulations.

**3.** Up until August 2004, the relevant period in the instant matter, the salary or fee basis minimum amount was $250.00.

commission did not rise above at least $1,150 per month, Defendant would supplement Plaintiffs' salary with a "draw" amount. "The guaranteed draw provides a compensation floor." *Id.*

Defendant contends that AGE's guaranteed draw program met the requirements promulgated by the Department of Labor ("DOL"). "The DOL regulations explain that the 'salary basis' component of the test is met so long as the employee 'regularly receives ... a predetermined amount constituting all *or part* of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of work performed.'" Doc. No. 83 at 12, citing 29 C.F.R. § 541.118(a), (b) (emphasis in original). Defendant asserts that "[t]he guaranteed draw portion of each Plaintiff's compensation *was not subject to reduction* due to variations in the quality or quantity of work performed, or for any reason whatsoever." *Id.* (emphasis in original). Defendant, in a footnote, does mention that the "draw" difference would be deducted from a subsequent paycheck if the following month's commissions exceeded the minimum floor amount.[4] *See id.* at 13, fn. 12.

Plaintiffs first argue that "the draw was a loan against plaintiffs' future commissions; if plaintiffs failed to earn sufficient commissions in a particular month to cover the draw, the deficit was carried forward and deducted from commissions in later months." Doc. No. 112 at 12. Plaintiffs contend that "[t]his draw arrangement did not meet the federal salary basis test." *Id.* Plaintiffs point out that "[i]n order to qualify as a salary, the required amount ($250 under the old short test) must be paid 'free and clear.'" *Id.*, citing 29 C.F.R. § 541.211(d)(old regs). Plaintiffs state that "'free and clear' means *finally and unconditionally.*" *Id.*, citing 29 C.F.R. § 531.35.[5] Plaintiffs cite to two DOL letters interpreting the "free and clear" test, stating that "the DOL's interpretation of that test is controlling unless 'plainly erroneous or inconsistent with the regulation.'" *Id.* at 13, citing *Auer v. Robbins,* 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997).

In one DOL opinion letter, dated March 4, 1971, the DOL opined that the employer's draw arrangement would violate the salary basis test:

> In order to meet the requirement of employment 'on a salary basis', the employees in question must be paid not less than $200 per week, free and clear, on the payday for that week. The employer may not satisfy the salary requirement by adopting an offset method whereby deficits in earned commissions

---

4. Defendant describes a situation where a draw difference would be deducted from the next month's paycheck:
 > Under AGE's system, if a Financial Consultant received a draw of $1,150 in January but only generated $1,000 in commissions that month, the difference of $150 would be factored into the calculation of his or her February commissions, *so long as his or her total monthly compensation did not drop below $1,150.*

 Doc. No. 83 at 13, fn. 12. (emphasis in original)

5. Plaintiffs cite to a DOL regulation in regards to the meaning "free and clear":

> Whether in cash or in facilities, 'wages' cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or 'free and clear.' The wage requirements of the Act [the FLSA] will not be met where the employee 'kicks-back' directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. This is true whether the 'kick-back' is made in cash or in other than cash. Doc. No. 112 at 12.

are carried forward or earned commissions are held in reserve. Doc. No. 112 at 13, citing U.S. Department of Labor Opinion Letter WH–129, 1971 DOL WH LEXIS 22 at *2 (March 4, 1971). Plaintiff Takacs points out as an example his May 2002 paycheck, where $209.13 was carried over and deducted from his subsequent paycheck. *See id.*

Defendant rebuts that deduction of a "draw" difference from subsequent paychecks is permissible under the rules. Defendants cite to several cases and DOL opinions letters for support, including *Hogan v. Allstate Insurance Co.*, 210 F.Supp.2d 1312, 1317 (M.D.Fla.2002); 1969 DOL WH LEXIS 74 (June 6, 1969); [6] 1995 DOL WL 1032470 (March 2, 1995); 1971 DOL WH LEXIS 22 (May 4, 1971).

First, the Ninth Circuit, in addressing questions under the FLSA, liberally construes the statute "to apply to the furthest reaches consistent with Congressional direction." *Klem v. County of Santa Clara*, 208 F.3d 1085, 1089 (9th Cir.2000). Furthermore, as noted above, "FLSA exemptions are to be 'narrowly construed against ... employers' and are to be withheld except as to persons 'plainly and unmistakably within their terms and spirit.' " *Id.* The Ninth Circuit, moreover, places the burden of demonstrating that an FLSA exemption applies squarely on the shoulders of the employer. *Id.* Thus, it is Defendant that carries the burden in this summary judgment motion of proving that Plaintiffs are administratively exempt under federal law from receiving overtime pay for work performed over 40 hours per week.

Next, *Hogan* does not support Defendant's contentions that a "draw" deduction from subsequent paychecks is permissible

under the regulations. *Hogan* addressed whether negative commissions deducted "in excess of the guaranteed monthly minimum" can be recovered in subsequent paychecks. 210 F.Supp.2d at 1317. The court explicitly found that because the "guaranteed monthly minimum was not required to be repaid by the [agents] in subsequent months ... this Court considers the guaranteed monthly minimum to be paid free and clear." *Id.* The court in *Hogan* explicitly distinguished between repayment of the "guaranteed monthly minimum" and repayment of "excess negative premiums," in contrast to the facts in the instant matter. *Id. Hogan*, therefore, teaches that if a guaranteed monthly minimum *was* required to be repaid in subsequent months, it would *not* be free and clear. As such, *Hogan* supports the conclusion that Defendant's draw program is not based upon a "free and clear" salary basis.

Plaintiffs also rebut that the May 4, 1971 DOL Opinion letter, citing an exemption to the "free and clear" rule, does not include Defendant's draw system. Plaintiffs contrast Defendant's system as deducting from the guaranteed salary itself, not as a variable in the formula used to calculate commissions. Defendant asserts that their draw system falls squarely within the exemption described in the 1971 letter.

The May 4, 1971 DOL Opinion Letter states in relevant part that:

In order to meet the requirement of employment "on a salary basis", the employees in question must be paid not less than $200 per week, free and clear, on the payday for that week. The employer may not satisfy the salary requirement by adopting an offset method whereby deficits in earned commissions

---

**6.** Plaintiffs urge this Court to disregard the June 6, 1969 letter because a letter on March 27, 1969 reached the direct opposite conclusion regarding the same plan. Plaintiffs, instead, urge that the Court take into consideration the "better-reasoned" 1971 letter cited in Plaintiffs' papers.

**1110**

are carried forward or earned commissions are held in reserve.

*U.S. Dept. of Labor, Workplace Standards Administration,* 1971 DOLWH LEXIS 22. However, the opinion letter goes on to describe a system wherein an employee is paid a guaranteed salary "plus extra compensation from commissions earned and paid in accordance with a formula." *Id.* This formula may provide for payment, in excess of the guarantee, for commissions taking into account "low volume weeks" and weeks where there are high sales volume. "The incidental fact that the period used for the computation includes workweeks with low as well as those with high sales volume does not mean that there is a recoupment by way of offset." *Id.* The opinion letter explicitly states that this deduction for low volume weeks must be deducted from computed commissions only "and not from the guaranteed salary which is earned and paid for each week." *Id.* Thus, it appears that the May 4, 1971 DOL opinion letter only applies to situations where "deficit commissions" are deducted from future commissions that are in addition to the guaranteed salary and/or draw payment. Taking the evidence in the light most favorable to Defendant, the non-moving party, this Court finds that the evidence does not support Defendant's contention that a deduction from a subsequent monthly paycheck is calculated as a variable under the rules. Instead, Defendant's statements that the draw difference is deducted from subsequent paychecks speak directly to the deduction as an offset from the guaranteed salary, and not as a variable in the calculation of commissions paid. This Court, therefore, construes the "draw" deduction as an impermissible offset that is taken from Plaintiffs' guaranteed salary.

Finally, Defendant's use of a March 1995 letter is inapposite to the facts cited in this case. The scenario giving rise to the DOL opinion letter specifically refers to a situation where a bonus could be paid in addition to a fixed weekly salary of $250.00. However, unlike Plaintiffs' situation, the commission is calculated by subtracting "the amount of the guaranteed fixed weekly salary received during the period for which the commission is calculated." DOL Opinion Letter, March 2, 1995, 1995 WL 1032470 at *1. In other words, there is no draw to ensure that a fixed weekly amount is paid to the employee. Instead, a commission is paid *in addition to* the guaranteed weekly salary. This scenario significantly differs from Plaintiffs' salary basis situation. As such, this Court does not accord significant weight to the March 1995 DOL opinion letter.

Case law and the DOL opinion letters cited by both parties, therefore, appear to support that deduction of Plaintiffs' draw salary from a subsequent paycheck is an impermissible offset. Taking the facts in the light most favorable to the non-moving party, this Court finds that Defendant has not met its initial burden of showing that Plaintiffs' salary basis comes within the administrative exemption of the FLSA. Because Defendant fails to meet the requirements established under the FLSA for exempt employees, Defendant's motion for summary judgment of claim one is, therefore, DENIED.

*b. Plaintiffs' Work Duties*

To make a showing that Plaintiffs' primary duties render them exempt under the FLSA, Defendant must also demonstrate that Plaintiffs' primary duties consist of activities that are administrative, and that their work is of substantial importance to the operation of Defendant's business. 29 C.F.R. § 541.205(a). "Primary duties" generally occupy over 50% of an employee's time. *See* C.F.R. §§ 541.103 and 541.206(b). If less than 50%, other factors come into play, including "the rele-

vant importance and frequency of the other relevant duties to the other activities." *Palacio v. Progressive Ins. Co.*, 244 F.Supp.2d 1040, 1047 (C.D.Cal.2002).

Whether an employee's duties are "administrative" can be a difficult exercise for the court. *See Bothell v. Phase Metrics. Inc.*, 299 F.3d 1120, 1126 (9th Cir.2002). Generally, administrative duties are distinguished from production-type services of a company. *See* 29 C.F.R. § 541.205(a). The "administration/dichotomy test" promulgated by the DOL states in relevant part:

> The phrase "directly related to management policies or general business operations of his employer or his employer's customers" describes those types of activities relating to the administrative operations of a business as distinguished from "production" or, in a retail or service establishment, "sales" work. In addition to describing the types of activities, the phrase limits the exemption to persons who perform work of substantial importance to the management or operation of the business of his employer or his employer's customers.

29 C.F.R. § 541.205(a).

Although an important test in clarifying the phrase "work directly related to the management policies or general business operations," the *Bothell* court admonished the singular reliance on the administration/dichotomy test where work does not fall "squarely on the 'production' side of the line." 299 F.3d at 1127. Instead, the court recognized that the test is but one piece of a larger inquiry, requiring the analysis of all relevant statutes and applicable regulations as a whole. *Id.* at 1126. In particular, the Ninth Circuit explicitly found that 29 C.F.R. § 541.205(a) should be read in conjunction with § 541.205(b), which states in relevant part that:

> The administrative operations of the business include the work performed by so-called white-collar employees, engaged in "servicing" a business as, for example, advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control.

29 C.F.R. § 541.205(b). These "advising ... planning, negotiating, [and] representing" activities are considered exempt whether they service the business of the employer or of the employer's customers. *See* 29 C.F.R. § 541.205(d).

Defendant argues that the DOL has "expressly opined in its interpretative regulations ... that *stockbrokers*, like Plaintiffs, are exempt administrative employees." Doc. No. 83 at 13. Defendant cites to 29 C.F.R. § 541.205(d), which states in relevant part:

> Under section 541.2 the "management policies or general business operations" may be those of the employer of the employer's customers.... Typical instances are tax experts ... [and] financial consultants ... Such employees, if they meet the other requirements of section 541.2, qualify for the exemption regardless of whether the management policies or general business operations to which their work is directly related are those of their employer's clients or customers or those of their employer.

*Id.* Defendant states that Plaintiffs, who hold the title of "financial consultants" meet the requirements for exemption as administrative employees because they were highly trained professionals that "use[d] their own independent judgment to determine, before any recommendation is made, that the transaction is 'suitable' for the client's investment portfolio based on the client's financial situation and investment objectives." Doc. No. 83 at 5. Defendant points out that Plaintiffs:

- Are highly trained and licensed by the NASD

- Underwent extensive training on management of client portfolios, "only a small portion of which focused on prospecting" Doc. No. 128 at 4
- Plaintiffs could only recommend investments and portfolio allocations if the recommendations were "suitable" to the client as defined by applicable regulations
- Plaintiffs had dozens of clients and were responsible for managing these clients' substantial assets
- Plaintiffs worked on their own without significant supervision and "controlled entirely their own tasks and hours"

Doc. No. 128 at 5. Defendant concludes that based on Plaintiffs' undisputed job description, their jobs fall under the administrative exemption.

Plaintiffs point out that "job titles are 'of no determinative value.'" Doc. No. 141 at 2, citing to 29 C.F.R. § 541.201(b) (old regs). Plaintiffs argue instead that their "primary" duties are related to Defendant's retail or service establishment "sales work," as opposed to "administrative" work.[7] Doc. No. 112 at 4. Plaintiffs point to the following evidence in support of their conclusion:

- Plaintiff Takacs spent at least 75% of his time cold-calling prospective clients to sell bonds and other financial products
- Plaintiff Flynn spent more than 50% of his time prospecting for clients
- Defendant's branch management guidelines, documents, training guides, as well as Defendant's Senior Vice President state that a Financial Consultant's "primary responsibility is to generate sales" in order to generate a commission or fee to Defendant
- Defendant's training documents refer to a Financial Consultant as a "sales-

person", and explain the main reason for failure is that Financial Consultants don't like to sell

*See* Doc. No. 112 at 6–8. Moreover, Plaintiffs point out that they do not set corporate policy, do not formulate business plans, do not establish or negotiate prices of securities, do not set the wages of the support staff, nor do they make decisions that affect the company as a whole. *Id.* at 9. Plaintiffs emphasize that they formed the "production" aspect of Defendant's business, i.e. "engaged in producing and selling the goods and services 'that the enterprise exists to produce and market,' and it was these efforts by plaintiffs and the other Financial Consultants that generated revenue for the firm." *Id.* at 10. Defendant does not dispute that Plaintiffs spent more than 50% of their time "cold-calling" or trying to obtain new clients for the purpose of selling its securities and other financial offerings. Moreover, Defendant does not dispute Plaintiffs' contentions that Plaintiffs do not set corporate policy, do not formulate business plans for Defendant, do not have the authority to set the wages of the support staff and do not make decisions that affected the company as a whole.

This Court finds that there is a genuine issue of material fact regarding whether Plaintiffs are engaged in work that results from the product that Defendant profits from, in this case sales of securities and other financial offerings, rather than in the administration of Defendant's business or that of its existing customers. Accordingly, the evidence submitted supports the conclusion that at a minimum, there exists a genuine issue of material fact regarding Plaintiffs' status as an administratively exempt employee.

---

**7.** Plaintiffs state that AGE admits to describing the company as a "retail or service estab- lishment." Doc. No. 112 at 4, citing to Defendant's Memo P & A, Doc. No. 83 at 22–26.

Viewing the evidence and case law as a whole and in a light most favorable to the non-moving party, this Court therefore finds that Defendant fails to meet its burden of showing that Plaintiffs' primary duties fall within the federal administrative exemption under the FLSA.

### 2. *Federal Commission Exemption*

■ Defendant argues that Plaintiffs are exempt from overtime requirements because they were paid primarily on a commission basis. Doc. No. 83 at 21. 29 U.S.C. § 207(i) provides an exemption where:

1. the employee is paid in excess of one and one-half times the minimum applicable hourly wage;
2. more than half the employee's compensation represents commissions on goods or services; and
3. the employee works for a retail or service establishment.

Plaintiffs rebut that the employees earned more than 1.5 times the minimum wage, and that Defendant's business can be characterized as a retail or service establishment. Doc. No. 112 at 17.

### a. *Plaintiffs' Compensation Basis*

Defendant, accepting Plaintiffs' assertions that they worked an average of 60 hours per week, calculated that the test of "one and a half time the federal minimum wage" would be met for the relevant period if Plaintiffs received at least $2047.50 per month.[8] Doc. No. 83 at 21. Defendant estimates that Plaintiff Takacs was paid an average of $2,748.90 per month and Plaintiff Flynn an average of $3,161.23 per month. *Id.* Defendant cites to *Walton v. United Consumers Club. Inc.*, 786 F.2d 303 (7th Cir.1986), for the proposition that

compensation and hours need not be broken down week by week. *Id.* at 21 fn. 18.

Plaintiffs argue that Defendant's calculations are incorrect, and cites to DOL regulations that require employers to calculate an employee's pay on a *workweek* basis, not a monthly basis. Doc. No. 112 at 17–18, citing to U.S. Dept. Lab. Op. Ltr. FLSA 2005–44, 2005 DOL WH LEXIS 58 at *3 (October 24, 2005). By calculating Plaintiff Takacs and Flynn's earnings on a workweek basis, Plaintiffs calculate that Plaintiff "Flynn failed to earn more than 1.5 times the federal minimum wage in 4 out of the 12 months (or 13 weeks) and Takacs failed to meet this earnings threshold in 9 out of 28 months (or 38 weeks) during the limitation period." *Id.* at 18–19. Plaintiffs assert that because they do not meet the federal commissioned sales exemption for at least those weeks, Defendant's motion should be denied. *Id.*

29 U.S.C. § 207(i) states:

No employer shall be deemed to have violated subsection (a) of this section by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 206 of this title.

That the plain language of the statute explicitly bases the calculation of the minimum compensation on a "workweek" supports Plaintiffs' arguments that the amount of pay should be calculated on a per workweek basis, rather than on a monthly basis as Defendants calculated. Accordingly, the plain language of the FLSA supports Plaintiffs' arguments.

**8.** Defendants calculated this amount by multiplying 60 hours by 52 weeks at $5.25 per hour, and multiplying by the required 1.5 times amount. The value was then divided by 12 to obtain the average monthly salary necessary to meet the requirement under 29 U.S.C. § 207(i).

Plaintiffs also cite to 29 C.F.R. § 778.104, whose title is "Each workweek stands alone." In calculating overtime pay, the regulations state that "[t]he Act takes a single workweek as its standard, and does not permit averaging of hours over 2 or more weeks." *Id.* The regulations go on to state "[t]he rule is applicable to ... employees paid on a commission basis. It is therefore necessary to determine the hours worked and the compensation earned by ... commission employees on a weekly basis." *Id.* In addition, Plaintiffs cite to 29 C.F.R. § 779.419(b), which reiterates that "[t]he employee's regular rate of pay must be computed ... on the basis of his hours of work in that particular workweek and the employee's compensation attributable to such hours." 29 C.F.R. § 779.419(b), cited by *Klinedinst v. Swift Investments, Inc.,* 260 F.3d 1251 (11th Cir.2001). Plaintiffs conclude that although they were paid commissions on a monthly basis, the parties, according to the regulations, should calculate salaries on a weekly basis, not a monthly basis as Defendant suggests.

Defendant, however, points out that the law does not disallow the averaging of salaries to obtain the requisite commission calculation, and further states that even with Plaintiffs' calculations, both sums are a result of "averaging" salaries, presumably because Plaintiffs were not paid on a weekly basis, but rather on a monthly basis. Doc. No. 128 at 10. Defendant further argues in its reply that the "Court should grant partial summary judgment as to all workweeks in which Plaintiffs concede they were paid more than 1.5 times the minimum wage." Doc. No. 128 at 10 (emphasis omitted). This Court declines Defendant's invitation to grant summary judgment or partial summary judgment at this juncture. The record in this matter suggests that the method Defendant uses for calculating the relevant compensation value is incorrect. Additionally, this Court

rejects Defendant's assertion that Plaintiffs' calculations of their regular rate of pay amount to an admission that some of the relevant pay periods rose above the 1.5–times threshold. The Court instead finds that Plaintiffs' calculations, which were based on data used by Defendant, only demonstrated that Defendant used an incorrect rate equation. For these reasons, therefore, Defendant's arguments fail here because there exists a genuine issue of material fact as to whether Plaintiffs' salaries were more than 1.5 times the minimum wage during the relevant time period.

### b. *Retail or Service Establishment*

■ In order to meet the requirements under the federal commission exemptions, Defendant must also show that its business is a "retail or service establishment." 29 U.S.C. § 207(i) sets forth three criteria for establishing whether a business can be defined as a "retail or service establishment":

- it must engage in the making of sales of goods or services;
- 75% of its sales of good or services, or both, must be recognized as retail in the particular industry; and
- not more than 25% of its sales of goods or services, or both, may be for resale

29 C.F.R. § 779.313. Plaintiffs argue that Defendant fails to provide sufficient evidence that at least 75% of its sales are retail in nature, and that no more than 25% of its sales were for resale. Doc. No. 112 at 19–20. Plaintiffs point to Defendant's admissions that it also "provides such *non*-retail services as underwriting, corporate finance, municipal finance, mergers and acquisitions, and advice on institutional accounts." *Id.* at 20, citing to Lee depo. 24:18–25:25. Plaintiffs also state that Defendants fail to provide evidence that its sales comprised not more than 25%

in resale. Finally, Plaintiffs emphasize that the DOL regulations explicitly exclude "stock or commodity brokers" and "investment counseling firms" as "establishments that have no retail concept."[9] *Id.* at 21, citing to 29 C.F.R. § 779.317.

Defendant first argues that all of its "branch activities are considered 'retail' in the industry." Doc. No. 128 at 11. Defendant distinguishes its branch services, which provides retail financial services to individual investors, as compared to its investment banking division, which provides institutional, mergers and acquisitions and corporate finance services. *Id.* Defendant also states that Defendant had no intent to resell the "goods bought and sold by AGE's clients," and therefore it meets the resale element under the applicable test. *Id.* Finally, Defendant points out that Plaintiffs' use of 29 C.F.R. § 779.317 is entitled to no deference since the Ninth Circuit in *Martin v. The Refrigeration School, Inc.*, 968 F.2d 3, 6–7 (9th Cir.1992) found the list to be arbitrary. *Id.*

The Supreme Court in *Chevron USA, Inc. v. NRDC*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), found that "a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." 467 U.S. at 844, 104 S.Ct. 2778. In *Martin*, the Ninth Circuit analyzed whether the "non-retail list" of section 779.317 is entitled to deference under *Chevron*. The Ninth Circuit in *Martin*, in applying the *Chevron* rule, discussed that the rule did not apply to the Secretary's promulgation of the non-retail list as it pertains to the specific subject of schools because the list included schools,

but not "schools for mentally or physically handicapped or gifted children." *Martin*, 968 F.2d at 7. The court found that the treatment of the type of schools included on the DOL's retail list was arbitrary, and that the DOL's reasoning was "far from apparent from the Secretary's characterization" of retail establishments under 29 C.F.R. § 779.318. Thus, contrary to Defendant's statements, the Ninth Circuit did not find the entire list to be arbitrary, but rather limited its treatment of the list as it pertains to schools only. Defendant's characterization of *Martin*, therefore, is unpersuasive.

Moreover, Plaintiffs argue that Congress' intentions when amending the FLSA in 1949 was to adopt the DOL's pre–1949 interpretations of the term "retail or service establishment." In support, Plaintiffs cite to the Supreme Court's decision in *Mitchell v. Kentucky Finance Co.*, 359 U.S. 290, 292, 79 S.Ct. 756, 3 L.Ed.2d 815 (1959). The Ninth Circuit recognized *Mitchell* in *Goldberg v. Roberts*, 291 F.2d 532, 534 (9th Cir.1961), that found that "where it has been established by (pre–1949) interpretation that an industry is not retail, unless that application was due to the business use test, the industry is not now exempt." Doc. No. 112 at 22. As Plaintiffs point out, the business use test does not apply in regards to pre–1949 interpretations. Since the DOL in its 1938 interpretation letter established that stock brokers and investment counseling industries are not retail or service establishments, and that interpretation was not dependent upon the business use test, it appears that, in accordance with Congress' intentions when amending the FLSA, Defendant's business is not exempt

---

**9.** Plaintiffs point out that "[a]lthough the DOL's regulations is not binding on this Court, it is entitled to deference," citing to *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944) (DOL interpretations of the FLSA "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance"). Doc. No. 112 at 21.

under 29 U.S.C. § 207(i). Defendant's arguments, therefore, regarding its business qualifying as a "retail or service establishment" is unpersuasive. Accordingly, this Court DENIES Defendant's summary judgment motion as to Plaintiffs' first claim based on the federal commission exemption.

### 3. *California Business & Professions Code § 17200*

■ Defendant next argues that Plaintiffs' "FLSA-based overtime claim under Business and Professions Code § 17200 (Unfair Competition Law or "UCL")[10] must also be dismissed because the FLSA provides the exclusive remedy for their claim." Doc. No. 83 at 26. Defendant emphasizes that the FLSA under the "exclusive remedy" doctrine limits a plaintiff's ability to recover lost wages under state law, and the opt-in provisions of the FLSA would be frustrated by any application of California state law. *Id.* at 27–28.

Plaintiffs rebut that the FLSA preempts Plaintiffs' ability to recover under the UCL "because the UCL does not 'stand as an obstacle' to Congress' purpose in enacting the FLSA." Doc. No. 112 at 25. Plaintiffs maintain that the UCL claim does not frustrate Congress' intent of protecting employees against substandard wages or oppressive working hours. *Id.* Additionally, Plaintiffs point to Ninth Circuit and district court authority that have found the FLSA does not preempt a claim under the UCL where the claim alleges an FLSA violation as its predicate act. *Id.* at 27.

The Ninth Circuit has held that the FLSA does not preempt state law overtime wage laws, finding that "the FLSA does not preempt California from applying its own overtime laws." *Pacific Merchant Shipping Ass'n v. Aubry*, 918 F.2d 1409, 1418 (9th Cir.1990). In *Tomlinson v. Indymac Bank*, 359 F.Supp.2d 898 (C.D.Cal.

2005), the district court was called upon to determine whether plaintiffs who did not opt-in to a pending FLSA litigation would be preempted from bringing a cause of action under the UCL. The district court, in examining the scope and purpose of both the FLSA and UCL, found that plaintiffs were entitled to recover overtime wages under the UCL. The court, in analyzing Congress' intentions under the FLSA stated that "a claim is not precluded simply because it is procedurally barred by the underlying statute." *Id.* at 900 (citations omitted). The district court, relying on *Pacific Merchant Shipping Ass'n*, explicitly found that because the UCL "makes violations of other law *independently actionable* ... the UCL creates a second cause of action ... allowing non-Opt Ins ... [to] pursue their independent UCL claim." *Id.*

Other district courts have also found that the FLSA does not preempt the application of state laws. For example, in *Barnett v. Washington Mutual Bank*, 2004 WL 2011462, 2004 U.S. Dist LEXIS 18491 (N.D.Cal. Sept. 9, 2004), *Willis v. Cal–Western Transport*, Case No. CV–F–00–5695, slip op. (E.D.Cal. Dec. 22, 2000), *Bahramipour v. Citigroup Global Markets, Inc.*, 2006 WL 449132 (N.D.Cal. Feb.22, 2006) and *Bureerong v. Uvawas*, 922 F.Supp. 1450, 1477 (C.D.Cal.1996), the district courts found that a UCL claim could be predicated on an alleged FLSA violation, and not conflict with congressional goals under the FLSA. Moreover, the courts found that the FLSA's opt-in provisions would not be frustrated by the UCL's opt-out procedures. "[T]he purpose of the FLSA's 'opt-in' requirement, to limit the enormous liability for employers which had been threatened by the thousands of federal wage and hour claims filed in the wake of the *Anderson* decision, is

---

**10.** The UCL prohibits any "unlawful, unfair or fraudulent business act or practice."

not directly implicated by Plaintiff's [state law] claims.... [T]he UCL's opt-out procedure does not stand as an obstacle to the congressional purpose in enacting the FLSA, as amended." *Bahramipour*, 2006 WL 449132 at *6.

Defendant cites to *Williamson v. General Dynamics Corp.*, 208 F.3d 1144 (9th Cir.2000), and *Lerwill v. Inflight Motion Pictures, Inc.*, 343 F.Supp. 1027 (N.D.Cal. 1972), to support its argument that Ninth Circuit law recognizes the FLSA as providing the exclusive remedy for wage and overtime claims. Defendant's use of *Williamson* is not persuasive to this Court. In *Williamson*, the Ninth Circuit conducted a thorough preemption analysis of whether the FLSA provided the exclusive remedy for overtime and wage hour claims, taking into consideration the general purpose of the FLSA and any language that would support preemption of state law fraud claims. 208 F.3d 1144. Noting that the general purpose of the FLSA is to "protect all covered workers from substandard wages and oppressive working hours," the Ninth Circuit found neither an express preemption of state law fraud claims in the FLSA, nor Congressional intent "to preempt the entire field" under field preemption analysis. *Id.* at 1150–51. The court, in a thorough discussion of conflict preemption, also found that the FLSA did not preclude a state law cause of action, explicitly rejecting the district court's finding that "the FLSA is the exclusive remedy for claims duplicated by or equiva-

lent of rights covered by the FLSA." *Id.* at 1152. Finding that Congress did not express a "'clear and manifest' intent ... to preempt all state tort laws," the Ninth Circuit rejected defendant's argument that the FLSA provided the exclusive remedy for plaintiffs' claims.[11]

Similarly, as found in *Williamson*, the FLSA under express or field preemption analysis does not preclude a state law UCL cause of action as in the instant matter. Under a conflict preemption analysis neither is application of the UCL impossible nor does it stand as an obstacle to the general purpose of the FLSA. The purpose of the UCL is not contrary to the FLSA's purpose of protecting employees. *See Williamson*, 208 F.3d at 1155. *Williamson* counsels that "preemption issues ... must be decided on a case-by-case basis." *Id.* Here, as in *Williamson*, Plaintiffs fraud claims under the UCL would not contradict any purpose or application of the FLSA, and therefore should stand.[12]

Defendant is correct that the appeals court in *Williamson*, while addressing whether state tort claims are preempted by the FLSA, did state in dicta that "[c]laims that are directly covered by the FLSA (such as overtime and retaliation disputes) must be brought under the FLSA." *Id.* at 1154. However, as recognized by the district courts in *Barnett*, *Bahramipour*, and *Willis*, such dictum is not binding on this Court. As noted in *Willis*, although "[t]he foregoing statement might at first seem to support [defen-

---

11. As noted in *Williamson*, "*Lerwill* is a dubious authority." 208 F.3d at 1153. *Lerwill* is a contract dispute case, where plaintiffs sought to incorporate provisions of the FLSA into the terms of the contract. *Lerwill v. Inflight Motion Pictures, Inc.*, 343 F.Supp. 1027, 1028 (N.D.Cal.1972). As noted by the court in *Williamson*, *Lerwill* "was about the plaintiff's effort to get a more favorable remedy." The facts in *Lerwill*, therefore, are inapposite to the procedural facts in this case.

12. As noted in *Williamson*, "'ordinarily, state causes of action are not pre-empted solely because they impose liability over and above that authorized by federal law.'" 208 F.3d at 1154, quoting *English v. General Electric Co.*, 496 U.S. 72, 89, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990). Here, because the UCL may protect against a greater number of violations of federal law should not be a reason for applying pre-emption of state law actions.

**1118**

dant's] argument . . . upon careful consideration . . . in light of the Ninth Circuit's extensive preemption analysis and the general purpose of the FLSA, the better interpretation is that it does not." Slip Op. at \*23. This Court finds the *Willis, Barnett,* and *Bahramipour* court's reasoning persuasive, and agrees that *Williamson* does not teach preemption by the FLSA of state law UCL claims.

Accordingly, although the FLSA does provide a remedy regarding overtime disputes, this Court finds persuasive the holding from numerous courts that have found no preemption by the FLSA in regards to UCL claims. As such, Plaintiffs first cause of action under the UCL is not preempted by the FLSA, and they are entitled to bring their action under state law. The Court, therefore, DENIES Defendant's motion for summary judgment that Plaintiffs' first cause of action must be brought exclusively under the FLSA.

### 4. *Unfair Competition Claim Contrary to Public Policy*

■ Defendant also contends that Plaintiffs' UCL claim should fail because "it is contrary to public policy under California law." Doc. No. 83 at 28. Defendant argues that since Plaintiffs are exempt as financial consultants, Defendant's "practices cannot be considered 'unlawful' under California's Unfair Competition law regardless of whether Plaintiffs could establish that AGE's practices violated the FLSA." *Id.*

Plaintiffs contend that Defendant's argument is moot because "federal and state laws are independent of each other." Doc. No. 112 at 30. Plaintiffs argue that "[e]ven if Financial Consultants were exempt under California law—which plaintiffs deny—they would not be foreclosed from attempting to recover overtime wages under the FLSA." *Id.*

Defendant reiterates in its reply brief that "Section 17200 may not be used to vindicate alleged unfair or unlawful conduct which the legislature has otherwise deemed lawful." Doc. No. 128 at 15, fn 19. Defendant's arguments are predicated on Plaintiffs being exempted under California commission and administrative exemptions. Doc. No. 83 at 28–29. As discussed below, because Plaintiffs have demonstrated the existence of a genuine issue of material fact as to whether they would be exempt under California Commission and/or Administrative exemptions, Defendant's argument that an unfair competition claim would not lie fails.

### 5. *Conclusion*

For the reasons stated above, this Court DENIES Defendant's motion for summary judgment of Plaintiffs' first claim for restitution of overtime pay on behalf of Class A.

### B. *Claims Two and Three—Restitution and Recovery of State Overtime Pay on Behalf of Class A*

Under claim two of the instant complaint, Plaintiffs allege California Wage Order 4–2001, 8 C.C.R. § 11040 provides that "an employee must be paid overtime, equal to 1.5 times the employee's regular rate of pay, for all hours worked in excess of 40 hours per week and/or 8 per day." Cplt. at ¶ 18. Plaintiffs allege that Class A members regularly worked more than 40 hours per week, but were not paid overtime. Similarly, Plaintiffs allege that under claim three "[p]ursuant to California Labor Code section 1194, the members of Class A are entitled to recover their overtime wages, plus interest, attorney's fees, and costs." Cplt. at ¶ 24. Defendant counters that Plaintiffs' second and third causes of action are barred because: 1) Plaintiffs were exempt from the overtime

provisions of California law under the California Commission Sales exemption; and 2) Plaintiffs were exempt from the overtime provisions of California law under the California administrative exemption. Doc. No. 82 at 2–3.

### 1. *California Commission Exemption*

Defendant argues that Plaintiffs are exempted under Cal. Wage Order 4–2001(3)(D) because Plaintiffs' earnings exceeded one and one-half times the state's minimum wage, and more than fifty percent of each plaintiff's earnings were derived from commissions. Doc. No. 83 at 29. Plaintiffs argue that Defendant failed to correctly calculate the workweek amount of each plaintiff, and Defendant failed to address whether plaintiffs "were involved principally in selling a product or service as opposed to making the product or rendering the service." Doc. No. 112 at 31. Plaintiffs add that Defendant fails to address the amount of time Plaintiffs were involved in sales activity, precluding summary judgment. *Id.*

Defendant reiterates that Cal. Wage Order 4–2001 § 3(D) does not have a sales duty requirement to meet the California commission exemption. Doc. No. 128 at 12. Although the plain language of the regulation in question only states that "[t]he provisions of [overtime pay] shall not apply to any employee whose earnings exceed one and one-half (1–1/2) times the minimum wage if more than half of that employee's compensation represents commissions," Defendant asserts the California Supreme Court in *Ramirez v. Yosemite Water Co., Inc.,* 20 Cal.4th 785, 85 Cal. Rptr.2d 844, 978 P.2d 2 (1999) found that the definition of "commissioned wages" requires an employee to be paid "for services rendered in the sale of such employee's property or services and based proportionately upon the amount or value thereof." *Id.* at 804, 85 Cal.Rptr.2d 844, 978 P.2d 2, citing to Cal. Labor Code § 204.1.

First, Defendant's argument that there is no requirement for a sales analysis is misplaced. In order for this Court to conclude that "more than half of th[e] employee's compensation represents commissions," it must first determine if the wages are "commissioned wages." *See Ramirez,* 20 Cal.4th at 804, 85 Cal.Rptr.2d 844, 978 P.2d 2. The court in *Ramirez* cited to *Keyes Motors, Inc. v. DLSE,* 197 Cal. App.3d 557, 242 Cal.Rptr. 873 (1987), which established two requirements that must be met before a compensation scheme is deemed to constitute "commissioned wages":

1. "[E]mployees must be involved principally in selling a product or service"; and

2. The amount of compensation must make up a percentage of the product or service's price.

*Ramirez,* 20 Cal.4th at 804, 85 Cal.Rptr.2d 844, 978 P.2d 2, citing to *Keyes Motors,* 197 Cal.App.3d at 563, 242 Cal.Rptr. 873. *Ramirez* also requires that the employee's sales duties not include " 'making the product or rendering the service.' " *Id.* From *Ramirez,* therefore, Defendant's assertion that it need not perform a duties or sales analysis under California law is incorrect. Defendant is thus required under the applicable law to demonstrate to this Court that the sales duties performed by Plaintiffs grant an exemption to Defendant. Defendant fails to do so here.

Although Defendant argues that Plaintiffs' assertions are disingenuous because they already admit that their primary duties involve sales, this Court finds that Defendant has improperly shifted the burden onto Plaintiffs to show whether their duties meet the requirements under the California Commission exemption. As noted by Plaintiffs, the California Commission exemption requires the asserting party to demonstrate that the employee was "in-

volved principally in selling a product or service, not making the product or rendering the service." Doc. No. 112 at 31. Defendant fails to address this factor in its papers. Thus, whether a trier of fact would find that Plaintiffs' work duties fall within the phrase "selling a product or service" as defined by California law has not been convincingly addressed by Defendant. Accordingly, Defendant fails to meet its initial burden of showing that Plaintiffs fall under the California Commission exemption.

■ Moreover, as Plaintiffs point out in their surreply, Defendant does not rebut that Plaintiffs "earned less than 1.5 times the California minimum wage during many weeks of their employment." Doc. No. 141 at 7. Plaintiffs state in their opposition that Plaintiff "Flynn earned less than the required minimum in 6 out of 12 months (26 weeks), and Takacs earned less than the minimum in 17 out of 26 months (71 weeks)." Doc. No. 112 at 31. Taking the evidence in the light most favorable to Plaintiffs, this Court finds that there is a genuine issue of material fact whether Plaintiffs meet the required minimum wages and meet the required job duties to qualify as exempt under California Commissioned Wages laws.

### 2. *California Administrative Exemption*

Defendant next contends that Plaintiffs are exempt under Cal. Labor Code § 515(a), which "provides an exemption 'for executive, administrative, and professional employees.'" Doc. No. 83 at 30. Defendants contend that, as with the federal administrative exemption, Plaintiffs meet all elements of this regulation. *Id.* Plaintiffs rebut, and state that their work duties and pay did not meet the requirements for exemption under the applicable California Labor Codes. Doc. No. 112 at 32.

Cal. Labor Code § 515(a), which is mirrored in California Wage Order 4–2001, excludes the relevant overtime and wage pay laws from being applied to administrative workers:

a) Whose duties and responsibilities involve ... (i) the performance of office or non-manual work directly related to management policies or general business operations of his/her employer or his/her employer's customers ...

b) Who customarily and regularly exercises discretion and independent judgment; and ...

d) Who regularly performs under only general supervision work along specialized or technical lines requiring special training, experience, or knowledge; ... and

f) Who is primarily engaged in duties that meet the test of exemption ... [which] are construed in ... the Fair Labor Standards Act...: 29 C.F.R. §§ 541.201, 541.207, 541.208, 541.210, and 541.215 ...

g) Such employee must also earn a monthly salary equivalent to no less than two (2) times the state minimum wage for full-time employment. Full-time employment is defined in Labor Code Section 515(c) as 40 hours per week.

Cal. Wage Order 4–2001. Plaintiffs argue that Defendant fails to prove elements (a), (f) and (g). Doc. No. 112 at 32.

#### a. *Duties and Responsibilities*

Plaintiffs argue that they are non-exempt employees "because they spent more than 50% of their time on production or sales work." Doc. No. 112 at 32. Plaintiffs point to deposition testimony to support that "[t]hey were not 'primarily engaged' in work directly related to the management policies or general business

operations of AGE or its customers." *Id.* Plaintiffs also point out that the California test explicitly incorporates "a quantitative test for determining exempt status: that is, the employer must prove that the employee spends more than half of his or her time on exempt tasks." Doc. No. 141 at 7. Plaintiffs assert that Defendant failed to meet its burden of proof by not providing evidence of how much time Plaintiffs "spent on *any* task." *Id.*

As discussed, there is a genuine dispute as to the material fact of whether Plaintiffs' work in "cold-calling" or trying to sell Defendant's financial products or services to new clients brings Plaintiffs work within the federal administrative exemption. Plaintiffs have filed declarations, which have not been disputed by Defendant, that Plaintiffs spent more than 50% of their time trying to acquire new clients, and that they were not primarily engaged in management or business operations duties. This Court, therefore, finds that there is a genuine issue of material fact as to whether Plaintiffs fall under the California administrative exemption.

### b. Salary Basis

Plaintiffs assert that "[s]ince 2000, California law has required that an administratively exempt employee receive a 'monthly salary equivalent to no less than twice the California minimum wage.'" Plaintiffs contend that at no time during the relevant period were Plaintiffs paid the required salary. Doc. No. 112 at 32. Plaintiffs point out that Plaintiff Flynn's salary never made it above the required $2,250 per month (versus the $2,430 minimum) between July 2003 and March 2004. *Id.* at 33. Plaintiff Takacs' salary between June 2000 and October 2002 also was below the minimum required. *Id.* Defendants admit that Plaintiffs were not paid the required amounts at the time, but point out that they were paid the required wages retro-

actively in December 2004, and therefore qualifies for the "window of correction" set forth in 29 C.F.R. § 541.118 and the Division of Labor Standards Enforcement ("DLSE") Manual. Doc. No. 83 at 31–32.

Plaintiffs rebut that 29 C.F.R. § 541.118 and the DLSE Manual's "window of correction" only covers improper deductions made with a good faith belief, not Defendant's situation where the employer failed to pay the proper amount in the first place. The language of the DLSE Manual specifically addresses only "[t]he effect of making a *deduction* not permitted by the California law," not Defendant's scenario where, either through ignorance or mistake, the employer failed to make the proper salary payments in the first place. The facts in the instant matter are inapposite to the circumstances in which the DLSE's window of correction would be applicable. Accordingly, the Court agrees with Plaintiffs argument and finds Defendant's reliance on the section 541.118 and the DLSE Manual unpersuasive.

Defendant introduces a new argument in their reply brief, stating that under Cal. Labor Code § 515, employees need only "earn," not "receive" the required amount. Defendant cites to an Eleventh Circuit and Northern District of Illinois case for support of its argument. The cases are inapposite to the facts at hand. In *Nicholson v. World Business Network,* 105 F.3d 1361 (11th Cir.1997), the Eleventh Circuit looked at the limited issue of whether an action under the FLSA can be filed in light of the existence of an employment contract between the parties. Similarly *Reich v. Midwest Body Corp.,* 843 F.Supp. 1249 (N.D.Ill.1994), also deals with the limited issue of an employment contract. Defendant, therefore, provides no basis for its position that the failure to pay the required salary to Plaintiffs should be excused.

### 3. Conclusion

Accordingly, this Court DENIES Defendant's motion for summary judgment of claims two and three based on California commission sales or administrative exemptions.

### C. Claims 5 and 6—Restitution and Recovery of State Law Overtime Pay on Behalf of Class B

Plaintiffs allege in claim five that "between June 30, 2000 and the date defendant reclassified the Trainees in California as non-exempt, Class B members did not meet the tests for exempt status under the California Wage Orders and the California Labor Code." Cplt. at ¶ 31. Plaintiffs also allege in claim six that "[p]ursuant to California Labor Code section 1194, the members of Class B are entitled to recover their overtime wages, plus interest, attorney's fees and costs." *Id.* at ¶ 35. Defendant counters that Plaintiffs' fifth and sixth cause of action are barred because neither Plaintiff was a trainee during the relevant time period. Doc. No. 82 at 3.

Plaintiffs rebut Defendant's contention, and states that Caitlan Manoogian, who was added as a class representative, was a trainee during the relevant time period. Doc. No. 112 at 35. As stated in her declaration, Plaintiff Manoogian spent time as a trainee "studying for her securities and insurance exams and attending sales training in St. Louis" between August 2001 and December 2001. *Id.* In addition, Plaintiff Manoogian states that "although she worked 50 hours per week, she did not receive overtime pay." *Id.* As such, Plaintiffs ask this Court to defer ruling on claims five and six until Plaintiff Manoogian is added to the complaint. Defendant does not respond to Plaintiffs' contentions. Because Ms. Manoogian was added to the instant complaint by this Court's Order of March 9, 2006 (*see* Doc. No. 119), and because Ms. Manoogian fits within the de-scription of a class B representative, this Court finds Defendant's motion is MOOT, and accordingly DENIES Defendant's motion for summary judgment of claims five and six.

### D. Claim 7—Rest and Meal Breaks on Behalf of Classes A and B

 Plaintiffs allege that Defendant "failed to provide [Plaintiffs] with all of their required rest and meal breaks" under Labor Code § 226.7. Cplt. at ¶ 37. Defendant counters that Plaintiffs were properly classified as exempt under California's administrative exemption and therefore are exempt from the Labor Code's meal and break requirements. Doc. No. 82 at 4. Defendant emphasizes that "along with the overtime claim from which it derives, this claim should be summarily adjudicated in AGE's favor." Doc. No. 83 at 37. As discussed, because there is a genuine issue of material fact as to Plaintiffs' qualification under California administrative exemption regulations, this Court accordingly DENIES Defendant's motion for summary judgment as to claim seven. *See infra* Discussion at § B(2).

### E. Claims 8 and 9—Restitution and Recovery of Business Expenses on Behalf of Class C

California Labor Code § 2802(a) states "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful."

Plaintiffs allege in claim eight that Defendant failed to reimburse "necessary business related expenses ... including without limitation training costs, seminar

costs, telephone charges, mailing costs, postage, subscriptions, office supplies, office equipment, wages of the support staff, costs associated with trading errors, costs to settle disputes with customers, and other necessary business-related costs or expenses that resulted from their employment with defendant." Cplt. at ¶ 39. In addition, Plaintiffs allege in claim nine that "[p]ursuant to California Labor Code section 2802, the members of Class C are entitled to recover their business expenses, plus interest, attorney's fees, and costs." *Id.* at ¶ 43. Defendant counters that no deductions were impermissibly made from Plaintiffs' wages in violation of California Labor Code. Doc. No. 82 at 4.

### 1. *Offsetting Errors and Losses*

Defendant contends that offsets "that were occasioned by the financial consultants *own* errors," such as the result of a complaint settlement or other errors, is not an impermissible deduction under California law. Doc. No. 83 at 38 (emphasis in original). Defendant states that "[b]y law, an employer may contract to pay an employee *any wage, computed in any fashion,* so long as basic provisions are satisfied." *Id.,* citing Cal. Labor Code § 200, *Earley v. Superior Court,* 79 Cal.App.4th 1420, 1430, 95 Cal.Rptr.2d 57 (2000). Plaintiffs rebut, stating that Cal. Labor Code § 2802(a) requires employers to bear "losses occurring in the scope of employment." Doc. No. 112 at 36. Citing Ninth Circuit case law, Plaintiffs state that "an employer must indemnify its employee

against claims made against the employee arising from the employee's discharge of his or her duties." *Id.*

In *O'Hara v. Teamsters Union Local # 856,* 151 F.3d 1152 (9th Cir.1998), an employee sued under a civil rights statute, bringing a cross-claim against her employer for indemnification under Cal. Labor Code § 2802. The court found that the employee should be indemnified by the employer for acts within the scope of employment unless the employee's conduct is "'so unusual or startling that it would be unfair to include the loss as a cost of the employer's doing business.'" *Id.* at 1158, fn. 1, citing to *Devereaux v. Latham & Watkins,* 32 Cal.App.4th 1571, 1582, 38 Cal.Rptr.2d 849 (1995). Plaintiffs argue that, like *O'Hara,* Plaintiff Takacs' customers filed an arbitration proceeding against Takacs and Defendant. Doc. No. 112 at 37. Although Defendant unilaterally settled the suit with Takacs' customer, it also unilaterally decided that Takacs should pay for part of the settlement costs.[13] Defendant reiterates in its reply that because the amounts were debited against Plaintiffs' commissions, and because the settlement debits and losses were contractually agreed upon with Plaintiff, the deductions were not improper under section 2802. California law explicitly prohibits employers from entering into any agreement with an employee that would have the effect of "waiv[ing] the benefits of this article or any part thereof." Cal. Labor Code § 2804. As such, Defendant's argument

**13.** Plaintiffs also argue that because Takacs never admitted any wrongdoing in the suit, the lawsuit was therefore "unfounded" and therefore Takacs should be indemnified. California law makes clear that section 2802 imposes no requirement of a suit or claim being "unfounded" before an employer must indemnify an employee for expenses incurred within the scope of employment. *See Jacobus v. Krambo Corp.,* 78 Cal.App.4th 1096, 1101, 93 Cal.Rptr.2d 425 (2000). As such,

regardless of Plaintiff Takacs' admission or denial of wrongdoing, if the complained of actions were performed within the scope of employment, Defendant must indemnify costs incurred "within the course and scope of employment." *Id.* This Court agrees with Plaintiffs, so long as Plaintiffs' conduct was not "so unusual or startling that it would be unfair to include the loss as a cost of doing business." *O'Hara,* 151 F.3d at 1158.

lacks merit in that any agreement entered into between the parties waiving § 2802 must be considered null and void.

In addition, whether Defendant could deduct costs within the scope of employment because Defendant was paid on commission, versus a salary, is also not persuasive. California law defines wages as "includ[ing] all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, *commission basis,* or other method of calculation." Cal. Labor Code § 200 (emphasis added). Therefore, under California law, salary earned on a commission basis is considered wages, rendering Defendant's arguments unpersuasive.

 Finally, Plaintiff Takacs' actions in assisting his customer regarding the maintenance of her portfolio should be considered within the scope of employment for purposes of § 2802. "An employer is vicariously liable for risks broadly incidental to the enterprise undertaken by the employer—that is, for an employee's conduct that, in the context of the employer's enterprise, is 'not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business.'" *Jacobus,* 78 Cal.App.4th at 1101, 93 Cal.Rptr.2d 425, citing to *Rodgers v. Kemper Costr. Co.,* 50 Cal.App.3d 608, 619, 124 Cal.Rptr. 143 (1975). Defendant has not shown that Plaintiff Takac's actions were not the tasks set forth by Defendant, his employer, and were not performed within the scope of his employment and within the context of his employer's enterprise.

### 2. *Client Extension Charges*

 Defendant contends that the payment of "time extensions" when clients do not pay for a transaction within three business days is not unlawful. Doc. No. 83 at 39. Defendant points out that financial

consultants are given "the option to cancel the transaction and lose their potential commission, or take the minimal charge for the extensions as a debit against commission credits." *Id.* Defendant also points out that Plaintiffs Flynn and Takacs incurred only *de minimus* amounts of approximately $108.00. *Id.* at 39–40. Defendant cites to New York state case for support that offsets for extension charges do not violate "New York State's illegal deduction statutes." *Id.* at 40.

Plaintiffs argue that "[s]ection 2802 mandates that AGE reimburse Takacs and Flynn for all other necessary business-related expenses they incurred in the course of their jobs." Doc. No. 112 at 38. "'As is clear from the legislation, under the California law, an employer may not 'pass through' the normal costs of operating a business to the employee he hires.'" *Id.,* citing to DLSE Op. Ltr.2000.08.01 at pg. 4. Plaintiffs point out that they "believed [the incursion of these expenses] were reasonably necessary to the performance of their jobs."

Defendant contends that it did not violate Cal. Labor Code § 2802 "which requires employers to reimburse employees for out-of-pocket expenses which are 'necessarily incurred.'" Doc. No. 83 at 40. Defendant points out that it provided Plaintiffs with the necessary tools, such as support staff, office equipment, phone and other costs, but the "financial consultants had the option to purchase, at their own expense, other business items over and above those necessary to doing business and for their own entrepreneurial initiatives." *Id.* Defendant contends that Plaintiffs chose to incur business expenses for occasional bonuses for their support staff, advertisement costs and magazine subscriptions. *Id.*

 Whether a business expense incurred is "necessary" for purposes of ap-

plying Cal. Labor Code § 2802 "is ordinarily a question of fact, but the issue may be determined as a question of law when the material facts are undisputed and no conflicting inferences are possible." *Jacobus*, 78 Cal.App.4th at 1103, 93 Cal.Rptr.2d 425. The parties clearly disagree as to whether the time extension costs, magazine subscriptions, advertisement costs and bonuses to support staff are "necessary" under § 2802. Although a trier of fact may agree with Defendant that such costs are unnecessary, it would be inappropriate for this Court to decide whether Plaintiffs' expense claims were "necessarily incurred" on summary judgment. Accordingly, Defendant's motion for summary judgment is DENIED.

### F. Claim 10—Waiting Time Penalties on Behalf of Class D

■ Plaintiffs allege that "Defendant willfully and intentionally failed to pay plaintiffs and the other Class D members all of the wages they were due by the deadlines imposed under Labor Code sections 201 and 202." Cplt at ¶ 45. Defendants counter that: 1) Plaintiffs were paid all wages due upon termination; 2) any failure to pay wages due was not willful; and 3) neither overtime nor business expenses are "wages" within the meaning of California Labor Code § 203. Doc. No. 82 at 4.

California Labor Code § 203 states in relevant part that:

> If an employer willfully fails to pay, without abatement or reduction, in accordance with sections 201, 201.5, 202 and 205.5, any wages of an employee who is discharged or quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

Sections 201(a) and 202(a) require an employer to pay an employee on the last day of employment if the employee is terminated, and within 72 hours if the employee quits.

#### 1. Wages

Although Defendant argues that all wages due upon termination were paid to Plaintiffs, Defendant admitted that it failed to pay salary that was due to Plaintiffs. *See* Discussion at § B(2)(b).

■ Defendant also argues that overtime pay or expense reimbursements are not "wages" under section 200, and therefore by allegedly failing to compensate Plaintiffs for overtime pay or expense reimbursement upon termination, Defendant could not have violated section 203. Doc. No. 83 at 41. Defendant cites to section 200 and *Earley v. Superior Court*, 79 Cal. App.4th 1420, 95 Cal.Rptr.2d 57 (2000), in support of its argument. The plain language of Cal. Labor Code § 200 does not support Defendant's argument. *See* Discussion at § E(1). Section 200 cannot be read to exclude overtime pay or reimbursement of expenses as wages. Defendant's citation of *Earley*, which dealt with the issue of contract interpretation versus overtime pay under the applicable California statute, also does not support its argument. In *Ghory v. Al–Lahham*, 209 Cal. App.3d 1487, 257 Cal.Rptr. 924 (1989), the California appellate court applied section 203 to overtime pay, allowing plaintiff to obtain "penalty wages" for defendant's failure to compensate him for overtime pay. *Id.* at 1492, 257 Cal.Rptr. 924. Accordingly, this Court finds unpersuasive Defendant's argument that overtime pay or expense reimbursements do not qualify as wages under section 200.

#### 2. Willful Failure to Pay

Defendant contends that even if they inadvertently failed to pay wages due at

the time of Plaintiffs' termination, such failure to pay was not willful. Doc. No. 83 at 41. Defendant argues that it had a "good faith belief," which precludes any finding of willfulness. Doc. No. 128 at 17, citing *Barnhill v. Robert Saunders & Co.,* 125 Cal.App.3d 1, 8, 177 Cal.Rptr. 803 (1981). Plaintiffs point out that "willfulness does not require a deliberate evil motive—'willful' simply means that the employer acted intentionally." Doc. No. 112 at 40. Plaintiffs point to case law, which defines "willful" as "merely that the thing done or omitted to be done, was done or omitted intentionally." *Id.,* quoting *Davis v. Morris,* 37 Cal.App.2d 269, 274, 99 P.2d 345 (1940). Plaintiffs argue that Defendant admits it failed to pay the proper wages, and therefore a good faith defense is not available to Defendant. Doc. No. 141 at 10.

California Administration Code, title 8, § 13520 states in relevant part:

A willful failure to pay wages within the meaning of Labor Code Section 203 occurs when an employer intentionally fails to pay wages to an employee when those wages are due. However, a good faith dispute that any wages are due will preclude imposition of waiting time penalties under Section 203.

The code goes on to define a good faith dispute:

A "good faith dispute" that any wages are due occurs when an employer presents a defense, based in law or fact which, if successful, would preclude any recover [sic] on the part of the employee. The fact that a defense is ultimately unsuccessful will not preclude a finding that a good faith dispute did exist. Defenses presented which, under all the circumstances, are unsupported by any evidence, are unreasonable, or are presented in bad faith, will preclude a finding of a "good faith dispute."

8 Cal. Admin. Code § 13520(a). Defendant points out that it is entitled to a good faith defense because "AGE intended to and believed in good faith that it had properly classified [Plaintiffs as] Financial Consultants and that it was paying them correctly." Doc. No. 128 at 17. Plaintiffs rebut, stating first that because Defendant admitted it had failed to pay Plaintiffs the correct amount of wages, it cannot rely on a good faith defense under California law. Doc. No. 141 at 10. Plaintiffs also point to undisputed evidence that Defendant knew of the changes in California's minimum wage law, and received "publications and weekly updates on changes in state wage and hour law." Doc. No. 112 at 41. Moreover, Defendant's Manager of Payroll, Mr. Scott Badgett, "testified that he learned that California had restored the daily overtime requirement in late 1999, and the salary basis threshold was raised in the *same* bill, Assembly Bill 60." *Id.* Plaintiffs point to a plethora of managers who "should have been aware of the changes in the law," concluding that "[t]here is simply no excuse for AGE to be ignorant of California law for nearly four years." *Id.*

In *Road Sprinkler Fitters Local Union No. 669 v. G & G Fire Sprinklers, Inc.,* 102 Cal.App.4th 765, 125 Cal.Rptr.2d 804 (2002), the California appellate court addressed whether waiting time penalties imposed on defendant employer should be reversed because of defendant's good faith dispute claim under § 13520. Defendant argued that a good faith dispute defense existed because it believed that it classified its employees correctly, and that " 'more than a simple mistake is required to impose the statutory penalties.' " *Id.* at 782, 125 Cal.Rptr.2d 804. The court rejected defendant's contention, finding first that an " 'employer's refusal to pay need not be based on a deliberate evil purpose to defraud workmen of wages which the employer knows to be due." *Id.* at 781, 125

Cal.Rptr.2d 804. "The term 'willful' within the meaning of section 203 means 'the employer intentionally failed or refused to perform an act which was required to be done.'" *Id.,* quoting *Barnhill v. Robert Saunders & Co.,* 125 Cal.App.3d 1, 7, 177 Cal.Rptr. 803 (1981). The court noted that although the defendant may have been mistaken in determining its workers' classification, and thus failing to pay the correct prevailing wage, the evidence established that the defendant "did not act in good faith" when it first established its workers' classification. *Id.* at 782–83, 177 Cal.Rptr. 803.

This Court finds that a trier of fact could find that Defendant's failure to follow and implement California wage law, despite knowing of the changes that occurred, and despite the level of sophistication found, was evidence of willfulness. *See Barnhill v. Robert Saunders & Co.,* 125 Cal.App.3d 1, 7, 177 Cal.Rptr. 803 (1981) (Defendant "intentionally failed ... to perform an act which was required to be done."). Considering the evidence in the light most favorable to Plaintiffs, this Court finds that there is a genuine dispute as to whether Defendant acted willfully when it failed to pay Plaintiffs the correct prevailing wage, and when it failed to classify Plaintiffs as non-exempt from overtime pay. Accordingly, the Court DENIES Defendant's motion for summary judgment regarding waiting time penalties on behalf of Class D.

### CONCLUSION AND ORDER

Accordingly, for the reasons stated above, **IT IS HEREBY ORDERED** that Defendant's motion for summary judgment is **DENIED** in its entirety.

**IT IS SO ORDERED.**